## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STANLEY F. FROMPOVICZ *d/b/a* FAR AWAY SPRINGS, on Behalf of Himself and All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>NIAGARA BOTTLING, LLC;<br>-and-<br>-ICE RIVER SPRINGS WATER CO. INC.;<br>-and-<br>CROSSROADS BEVERAGE GROUP;<br>-and-<br>JAMES J. LAND, JR. *d/b/a* MC RESOURCE DEVELOPMENT *a/k/a* PINE VALLEY FARMS SPRINGS,<br><br>     **Defendants.** | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff, Stanley F. Frompovciz d/b/a Far Away Springs, by and through undersigned counsel, on behalf of himself and all persons similarly situated, complains and alleges as follows on personal knowledge, investigation of counsel, or information and belief:

### NATURE OF THE CASE

1.   This putative class action seeks monetary damages and other relief under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and Pennsylvania law, in connection with the advertising and sale of bottled water that is falsely, deceptively, and misleadingly marketed, labeled, and sold as "spring water" by Defendants Niagara Bottling, LLC, Ice River Springs Water Co., Inc., Crossroads Beverage Group, and James F. Land, Jr. d/b/a MC Resource Development a/k/a Pine Valley Farms Springs (collectively, "Defendants").

2.      "Spring water" is naturally-occurring water that is sourced from a natural spring. To be considered "spring water," the water must satisfy a number of regulatory and/or industry criteria, which generally require the water to be collected from a spring, and in a manner such that its properties and characteristics are the same as when the water would bubble to the surface of the ground from a natural spring.

3.      Substantial time and resources are required to identify, develop, and maintain natural spring water sites.  Because of these and other associated costs, spring water typically sells at a premium compared to other types of bottled water.

4.      Customers recognize the distinction between spring water and other types of bottled water.  Customers can and do pay a premium for spring water because they prefer the taste, and/or method of extraction and bottling, to other types of bottled water.

5.      Businesses such as Plaintiff's have spent significant time, money, and resources to identify, develop, and maintain spring water sites.  Unfortunately, not all businesses are as willing as Plaintiff to invest the proper amount of time, money, and effort into this process.

6.      One such business is run by Defendant Jay Land d/b/a MC Resource Development a/k/a Pine Valley Farms Springs (collectively, "Pine Valley").  This Defendant is also in the business of extracting raw water from various sources.[1]  Pine Valley markets raw water to bottlers and others as "spring water," which is not in fact true spring water, but rather "well water."

7.      Defendants Niagara Bottling, LLC ("Niagara"), Ice River Springs Water Co. Inc. ("Ice River"), and Crossroads Beverage Group ("Crossroads") are in the business of bottling and selling water.  They purchase water from Pine Valley, bottle it, and sell it to purchasers.

---

[1] The term "raw water," as used herein, refers to any natural water prior to bottling for human consumption.

Niagara, Ice River, and Crossroads market and sell Pine Valley's water as "spring water" products, even though it is not true spring water.

8.     Defendants collectively have extracted, bottled, and sold non-spring water, such as well water, but have sought to pass-off this water as "spring water" knowing full well it is not spring water, so they can dupe customers into paying a premium.

9.     Defendants' false and misleading marketing and sale of their non-spring water products constitutes violations of the Lanham Act and Pennsylvania law, as set forth herein.

## JURISDICTION AND VENUE

10.     This complaint arises under 15 U.S.C. § 1125(a) and Pennsylvania law.  This court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1121, and 28 U.S.C. § 1367.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400 because Defendants are subject to personal jurisdiction and regularly conduct business in this district, a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district, at least one defendant resides or operates its/his business in this district, and Plaintiff was injured and subjected to irreparable harm in this district.

## THE PARTIES

12.     Plaintiff, Stanley F. Frompovicz is a resident and citizen of Pennsylvania.  Mr. Frompovicz does business as Far Away Springs, a fictitious trade name registered in Pennsylvania.  Far Away Springs has its principal place of business in Auburn, Pennsylvania.

13.     Defendant Niagara Bottling Co., LLC ("Niagara") is a limited liability company, partnership, corporation, or other legal entity doing business in the Commonwealth of Pennsylvania, with a registered office or place of business believed and therefore averred to be in or about Allentown, PA.  Niagara regularly and systematically conducts business throughout the Commonwealth of Pennsylvania, including in this district among elsewhere.   Niagara is primarily engaged in the business of bottling and distributing water for sale to retail and/or wholesale customers.

14.     Defendant Ice River Springs Water Co. Inc. ("Ice River") is a limited partnership, corporation, or other legal entity doing business in the Commonwealth of Pennsylvania, with a registered office or place of business believed and therefore averred to be in or about Center Valley, PA.   Ice River regularly and systematically conducts business throughout the Commonwealth of Pennsylvania, including in this district among elsewhere.   Ice River is primarily engaged in the business of bottling and distributing water for sale to retail and/or wholesale customers.

15.     Defendant Crossroads Beverage Group ("Crossroads") is a limited partnership, corporation, or other legal entity doing business in the Commonwealth of Pennsylvania, with a registered office or place of business believed and therefore averred to be in or about Reading, PA.  Crossroads regularly and systematically conducts business throughout the Commonwealth of Pennsylvania, including in this district among elsewhere.  Crossroads is primarily engaged in the business of bottling and distributing water for sale to retail and/or wholesale customers.

16.     Defendant James J. Land, Jr., is a resident and citizen of Philadelphia, Pennsylvania.  On information and belief, Defendant Land is the owner and manager of MC Resource Development, which also does business under the fictitious name Pine Valley Farms

Springs.  Defendant Land is engaged in the business of extracting and distributing water for bottling, distribution, and sale to retail and/or wholesale customers, including the marketing of water as originating from "Pine Valley Farms Spring" or "Pine Valley Springs" or "Protected Springs" in New Ringgold, Pennsylvania.

17.     At all times relevant hereto, on information and belief, MC Resource Development a/k/a Pine Valley Farms Springs was the alter ego of Mr. Land, insofar as Mr. Land dominated, influenced, and controlled MC Resource Development.  Given such, a unity of interest or ownership exists between Mr. Land and MC Resource Development, under which the individuality or separateness of each has ceased.  On information and belief, MC Resource Development was organized and operated as a shell pursuant to a fraudulent scheme to deceive in order to avoid individual liability and for the purpose of substituting a financially irresponsible fictitious entity in the place and stead of Mr. Land, without adequate business formalities and funding, and accordingly, adherence to any fiction separating the existence between Mr. Land and MC Resource Development under the circumstances would sanction fraud and promote injustice and, therefore, should be disregarded for purposes of the acts complained herein.

**COMMON FACTUAL ALLEGATIONS**

**A.     Overview of the Bottled Water Industry**

18.     Bottled water is the second largest beverage category by volume in the United States, just behind carbonated soft drinks.  According to the Beverage Marketing Corporation, "in 2015 the total volume of bottled water consumed in the United States was 11.7 billion gallons, a 7.6% increase from 2014.  That translates into an average of 36.3 gallons per person."[2]

---

[2] http://www.bottledwater.org/economics/bottled-water-market (last accessed Jan. 5, 2018).

19.     Yet, while consumption of other beverages such as carbonated beverages has been shrinking, consumption of bottled water has steadily increased for years, with the sharpest increases coming in consumption of spring water versus other types of bottled water.   For instance, according to the International Bottled Water Association, bottled water volumes hit a new record high in 2014, whereas soft drinks suffered its tenth consecutive year of volume reduction in 2014.[3]  Further, "bottled water *added* more gallons to its per-person consumption rate in 10 years than either ready-to-drink tea or sports beverages even *reached* by the end of that same period."[4]

20.     Bottled water's commercial success is attributable to several factors, including consumers' perceptions about taste, healthfulness, convenience, safety, and value as compared to other bottled beverages.

**B.     Overview of Spring Water**

21.     Per regulations set forth by the United States Food and Drug Administration ("FDA") and analogous state requirements, "bottled water" is water "that is intended for human consumption and that is sealed in bottles or other containers with no added ingredients[.]"  21 C.F.R. § 165.110(a).

22.     To be considered "spring water," the water must derive "from an underground formation from which water flows naturally to the surface of the earth."   21 C.F.R. § 165.110(a)(2)(vi).  Spring water "must be collected only at the spring."  *Id.*  Further, spring water "must have all the physical properties before treatment and must be of the same composition and quality as the water that flows naturally to the surface of the earth."  *Id.*  In

---

[3] http://www.bottledwater.org/public/BWR%20JulyAug%202015%20Issue_BMC_2014%20Bottled%20Water%20Statistics%20Article.pdf (last accessed Jan. 5, 2018) (emphasis original).

[4] *Id.*

other words, to be "spring water," the water must be collected from the spring, and its properties and characteristics must be the same as when the water bubbles to the surface of the ground from a natural spring.

23.     Because of geological and other technical requirements, substantial time and resources are required to identify, develop, and maintain natural spring water sites.

24.     Because of these and other associated costs, spring water typically sells at a premium compared to other bottled water, such as "well water" or "tap water," both of which are sometimes sold as "purified water," i.e., non-spring water which has undergone a purification process prior to being sold at wholesale or retail.  *See, e.g.*, 21 C.F.R. § 165.110(a)(2)(iv).  By contrast, a distinguishing feature of "spring water" is that it does not undergo the same level or type of purification as "purified water."

25.     Because of geological and other technical requirements, spring water site development requires substantial resources to identify, develop, and maintain the natural springs from which spring water comes.

26.     Spring water extraction is also a relatively localized process, with most sources being within reasonable transportation distance to bottling facilities due to the transportation costs associated with hauling water over distances.

27.     Customers recognize the distinction between spring water and other types of bottled water.  In addition to customers' paying a premium, customers also generally recognize and prefer the taste of spring water to other types of bottled water.

28.     Given these market dynamics, there is an economic incentive for extractors, bottlers, and others to market and sell spring water to customers, as opposed to other types of inferior or cheaper types of bottled water.  However, spring water sites are difficult to identify,

develop, and maintain because of the unique characteristics necessary to extract the water to ensure that it remains "spring water" throughout the extraction and bottling process.

### C. Defendant Land d/b/a MC Resource Development's Deceptive Sourcing and Marketing of Raw Water as "Spring Water"

29.     Defendant Land d/b/a MC Resource Development a/k/a Pine Valley Farms Springs obtained a Public Water Supply Permit from the Commonwealth of Pennsylvania's Department of Environmental Protection (DEP) to extract raw water for the purposes of bottling and selling to wholesale and/or retail customers.  Defendant formed this business with the intention to serve customers throughout the northeast United States, particularly throughout Pennsylvania.

30.     Defendant Land d/b/a MC Resource Development a/k/a Pine Valley Farms Springs owns and operates the bulk water hauling system and necessary equipment to extract raw water for the purposes of bottling.  The bulk water facility at issue is located in New Ringgold, Pennsylvania, under the name "Pine Valley Farms Springs" or "Pine Valley."

31.     Defendant Land d/b/a MC Resource Development a/k/a Pine Valley Farms Springs markets this site's raw water as "spring water" for bottling and consumption.

32.     However, the water sourced at Pine Valley Farms Springs is *not* spring water.  For one, raw water extracted at Pine Valley Farms Springs does not satisfy the FDA definition of "spring water" discussed above.

33.     Any business that extracts raw water extracted and intended for human consumption in Pennsylvania must obtain a permit from the DEP to do so.  The DEP permitting process, among other things, identifies the type of water "source" for a site that intends to extract raw water.  The potential source types are: well water; spring water; surface water; and finished water.

34.    DEP does not recognize Pine Valley Farms Springs as a "spring water" source either.   Pine Valley Farms Springs has never been permitted as a "spring water" site.   For instance, the most recent DEP permit for Pine Valley Farms Springs clearly identifies the site as a "well water" site, *not* a "spring water" site.   Here is an excerpt (the full permit is attached as Exhibit A hereto):



35.    True "spring water" sites extract raw water from an appropriately permitted "spring" source.   Here is an excerpt from one of Plaintiff's properly permitted "spring water" sources (the full permit is attached as Exhibit B hereto):

| A.  PERMITTEE (Name and Address) | B.  PROJECT/PLANT LOCATION | |
|---|---|---|
| Mr. Stanley F. Frompovicz<br>71 West Jefferson Lane<br>Auburn, PA  17922 | Municipality   South Manheim Township<br><br>County   Schuylkill | |

C.  THIS PERMIT APPROVES FOR:   1. ☐ CONSTRUCTION
AS INDICATED BELOW:   2. ☒ OPERATION OF FACILITIES
Approved Under Construction Permit No.  5413505

| Source | Facilities | BVRB |
|---|---|---|
| ☐ Well(s) | ☐ Impoundment | ☐ Bottled Water System |
| ☒ Spring(s) | ☐ Settling | ☒ Bulk Water Hauling System |
| ☐ Surface Water | ☒ Filtration | ☐ Vending Water System |
| ☐ Finished Water | ☐ Iron and Manganese Treatment | ☐ Retail Water Facility |
| | ☐ Softening | |
| | ☐ Fluoridation | |
| | ☐ Distribution Facility | |
| | ☐ General Corrosion Control | |
| | ☐ Corrosion Control for Lead/Copper | |
| | ☒ Disinfection | |
| | ☐ Pump Station(s) | |
| | ☐ Transmission Lines | |
| | ☒ Finished Water Storage | |
| | ☒ Other :  3 tanker additions | |

KNOWN AS   Far Away Auburn (Spring #1:  System A Treatment and Storage)

36.     Pine Valley Farms Springs is not, and has never been, permitted by the DEP as an extractor of raw water from a "spring" source.

37.     In addition, water extracted from Pine Valley Farms Springs has been extracted, handled, or treated with equipment or techniques that are inconsistent with "spring water" classification criteria.

38.     Further, water sourced from Pine Valley Farms Springs intended to be marketed and sold as "spring water" has tested as containing more particulates or trace elements than are otherwise permissible or recommended under industry standards for "spring water."

39.     In spite of all of this, Defendant Land d/b/a MC Resource Development a/k/a Pine Valley Farms Springs nonetheless fraudulently and deceptively markets and sells the raw water extracted at Pine Valley Farms Springs as "spring water."

**C.     The Bottler Defendants' False, Misleading, and Deceptive Advertising and Sale of So-Called "Spring Water"**

40.     Defendants Niagara, Ice River, and Crossroads are bottlers (the "Bottler Defendants").  They operate water bottling facilities in which extracted raw water is processed,

potentially treated in some fashion depending on the water classification, and placed in containers and distributed to retail and other outlets for sale and human consumption.

41.    All three bottling Defendants source raw water from Defendant Land d/b/a MC Resource Development a/k/a Pine Valley Farms Springs.  Bottling Defendants then bottle, market, and sell this water as "spring water," despite the fact that Pine Valley Farms Springs' water is not properly classified by DEP or otherwise as "spring water."

42.    By regulation, labels on bottled water sold for human consumption must identify both the source, *i.e.*, from where the water was extracted, as well as the bottler, *i.e.*, the business that packaged the water into bottles and distributed it for human consumption.  *See* 21 C.F.R. § 165.110(a)(2)(vi); *see also* 60 Fed. Reg. at 57,108.  The labels for the various "spring water" products sold by Defendant Bottlers demonstrate that they did in fact source the water from Pine Valley Farms Springs, but nevertheless called it "spring water."   Sample labels for each Defendant Bottler are as follows, all of which clearly identify a water "source" as Pine Valley Farms Springs or New Ringgold, PA (on information or belief, there is no other permitted water source in New Ringgold besides Pine Valley Farms Springs):















43.     Defendants' bottling and sale of water sourced from Pine Valley Farms Springs and labeled as "spring water" is incorrect, false, and misleading, and intended to give consumers the impression that the water is derived from an appropriate "spring water" source, when in fact that is not the case.

44.     Defendants' marketing and sale of their deceptively marketed "spring water" is damaging to the reputation and goodwill of Plaintiff, other Class members, and the consuming public.  These false and misleading misrepresentations are designed to entice purchasers (both retail outlets and consumers) to buy Defendants' products, and wrongfully cause purchasers to falsely believe that Defendants' "spring water" products are at least equal if not superior to Plaintiff's and other Class members' true spring water, which is not the case.

45.     Defendants' wrongful conduct has resulted in increased sales of their own deceptively labeled "spring water," hindering sales of Plaintiff's and other Class members' true spring water.  Plaintiff and other Class members have sustained and will sustain damages as a result of Defendants' continuing course of wrongful conduct.

## CLASS ALLEGATIONS

46.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

47.     The proposed classes are defined as:

All persons in the United States who, within the applicable statute of limitations preceding the filing of this action through class certification, extract and/or bottle spring water for sale in the United States (the "National Class").

All persons in the Commonwealth of Pennsylvania who, within the applicable statute of limitations preceding the filing of this action through class certification extract and/or bottle spring water for sale in the Commonwealth of Pennsylvania (the "Pennsylvania State Subclass").

The National Class and the Pennsylvania State Subclass are collectively referred to as the "Classes."

48.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

49.     Excluded from the Classes are Defendants, their parents, subsidiaries, affiliates, officers and directors, any entity in which a Defendant has a controlling interest, all persons who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

50.     Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

51.     The members of the Classes are so numerous that joinder is impractical. The Classes consist of many members, the identities of whom are within the knowledge of and can be ascertained by resort to Defendants' and other records.

52.     The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, is in the spring water business.  The representative Plaintiff, like all Class members, has been damaged by Defendants' misconduct in that they have been harmed by Defendants' false and misleading advertising and sale of so-called "spring water."  Furthermore, the factual basis of Defendants' misconduct is common to all Class

members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

53.     As set forth in detail below, common issues of fact and law predominate because all of Plaintiff's claims are based on common conduct.  Among the questions of law and fact common to the Classes are whether Defendants:

      a.   Falsely advertised and sold their water as spring water;

      b.   mislead consumers by advertising and selling their water as spring water;

      c.   deprive consumers of truthful and non-misleading information about the water Defendants advertise and sell; and

      d.   violated Pennsylvania law.

54.     Other questions of law and fact common to the classes include:

      e.   The proper method or methods by which to measure damages; and

      f.   the declaratory and injunctive relief to which the Classes are entitled.

55.     Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful conduct committed by Defendants as a result of their false and misleading advertising and sale of so-called "spring water." Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

56.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes. Plaintiff is represented by experienced and able attorneys.  The undersigned putative Class Counsel have litigated numerous class actions and complex cases and intend to prosecute this

action vigorously for the benefit of the entire Classes.  Plaintiff and putative Class Counsel can and will fairly and adequately protect the interests of all members of the Classes.

57.     Defendants have acted on grounds generally applicable to all Class members, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Classes as a whole.  The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants.

58.     Injunctive relief is necessary to prevent further false, misleading, and deceptive conduct by Defendants.  Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendants from continuing to engage in false, misleading, and deceptive conduct in the United States and Pennsylvania concerning their advertising and sale of so-called "spring water."

59.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the claims alleged herein.  Absent a class action, the Class members will continue to suffer losses and Defendants' misconduct will proceed without remedy.

60.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard

which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**False Advertising Under Lanham Act § 43(a)**
**(15 U.S.C. § 1125(a)) Against All Defendants**
**(On Behalf of the National Class)**

61.　　Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

62.　　Defendants have intentionally, knowingly, or otherwise made and distributed, in interstate commerce and in this District, advertisements or related materials that contain false or misleading statements of fact regarding their products.  These advertisements contain actual misstatements and/or misleading statements insofar as they state that Defendants' water is "spring water," but fail to disclose, among other things, that said water is not in fact "spring water," but rather is "well water" or other inferior non-spring water.

63.　　These false and misleading statements actually deceive, or have a tendency to deceive, a substantial segment of Plaintiff's customers and potential customers. This deception is material in that it is likely to influence the purchasing decisions of Plaintiff's or other National Class members' customers.

64.　　Defendants' false and misleading advertising statements and omissions injure both Plaintiff, other members of the National Class, and/or consumers.

65.　　Defendants' false and misleading advertising and omissions violate the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

66.     Defendants have caused, and will continue to cause, immediate and irreparable injury to Plaintiff and other members of the National Class, including to their business, reputation, and goodwill, for which there is no adequate remedy at law.  As such, Plaintiff and the National Class are entitled to an injunction under 15 U.S.C. § 1116 restraining Defendants, their agents, employees, representatives, assigns, and all persons acting in concert with them from engaging in further acts of false advertising or labeling, and ordering removal of all of Defendants' false advertisements or labeling.

67.     Pursuant to 15 U.S.C. § 1117, Plaintiff and the National Class are entitled to recover from Defendants the damages sustained by Plaintiff, and other members of the National Class, as a direct and/or proximate result of Defendants' acts in violation of the Lanham Act § 43(a).  Plaintiff is at present unable to ascertain the full extent of the monetary damages suffered by Plaintiff, or other members of the National Class, by reason of Defendants' wrongful conduct.

68.     Pursuant to 15 U.S.C. § 1117, Plaintiff and other members of the National Class are further entitled to recover from Defendants the gains, profits and advantages that they have obtained as a result of their wrongful acts.  Plaintiff is at present unable to ascertain the full amount of the gains, profits and advantages Defendants have obtained by reason of their acts.

69.     Pursuant to 15 U.S.C. § 1117, Plaintiff and other members of the National Class are further entitled to recover the costs of this action.  Moreover, Plaintiff is informed and believes, and on that basis, alleges that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Plaintiff and the National Class to recover additional damages and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF
**Unfair Competition Under Pennsylvania Law**
**Against All Defendants**
**(On Behalf of the Pennsylvania State Subclass)**

70.     Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

71.     Pennsylvania law protects against "unfair competition" which includes injury that may arise from false or misleading marketing and advertising.

72.     Defendants' wrongful conduct alleged herein as violations of the Lanham Act, also constitutes unfair competition under Pennsylvania law.

73.     Defendants have intentionally, knowingly, or otherwise caused, and will continue to cause, immediate and irreparable injury to Plaintiff and other members of the Pennsylvania State Subclass, including to their business, reputation, and goodwill, for which there is no adequate remedy at law.  As such, Plaintiff and the Pennsylvania State Subclass are entitled to an injunction restraining Defendants, their agents, employees, representatives, assigns, and all persons acting in concert with them from engaging in further acts of misleading advertising, and ordering removal of all of Defendants' misleading advertisements and related materials.

74.     Plaintiff and the Pennsylvania State Subclass are entitled to recover from Defendants the damages sustained by Plaintiff, and other members of the Pennsylvania State Subclass, as a direct and/or proximate result of Defendants' acts in violation of Pennsylvania law.  Plaintiff is at present unable to ascertain the full extent of the monetary damages suffered by Plaintiff, or other members of the Pennsylvania State Subclass, by reason of Defendants' wrongful conduct.

75.     Plaintiff and other members of the Pennsylvania State Subclass are further entitled to recover from Defendants the gains, profits and advantages that they have obtained as a

result of their wrongful acts.  Plaintiff is at present unable to ascertain the full amount of the gains, profits and advantages Defendants have obtained by reason of their acts.

76.     Plaintiff and other members of the Pennsylvania State Subclass are further entitled to recover attorney's fees and the costs of this action pursuant to Pennsylvania law, as well as punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

a.      Adjudging and decreeing that Defendants' conduct alleged herein constitutes false and/or misleading advertising in interstate trade and commerce in violation of the Lanham Act, as well as under Pennsylvania law;

b.      Damages sustained by Plaintiff and other members of the Classes in an amount to be determined at trial, including but not limited to marketplace damages, Defendants' profits, Plaintiff's and other Class members' lost profits, and/or any other appropriate measure of damages;

c.      Disgorgement of the ill-gotten gains derived by Defendants from their misconduct;

d.      That Defendants be permanently enjoined and restrained from advertising or selling their non-spring water as "spring water," including corrective advertising, provision of written notice to the public, and/or similar measures deemed necessary;

e.      That all of Defendants' false, misleading, and/or deceptive materials and products be destroyed as allowed under 15 U.S.C. § 1118 and/or Pennsylvania law;

f.      Actual, double, or treble damages as permitted by applicable law;

g.      Punitive and exemplary damages;

h.      Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

i.      Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees; and

j.      Such other relief as this Court deems just and proper.

**Dated:  January 8, 2018**

/s/  DJS8892
Richard M. Golomb, Esquire
Ruben Honik, Esquire
Kenneth J. Grunfeld, Esquire
David J. Stanoch, Esquire
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (215) 985-9177
Fax:    (215) 985-4169
Email:  rgolomb@golombhonik.com
          rhonik@golombhonik.com
          kgrunfeld@golombhonik.com
          dstanoch@golombhonik.com