IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STANLEY F. FROMPOVICZ,**<br>Plaintiff,<br><br>v.<br><br>**NIAGARA BOTTLING, LLC, ICE RIVER SPRINGS WATER CO, INC., CROSSROADS BEVERAGE GROUP AND JAMES J. LAND, JR.,**<br>Defendants. | CIVIL ACTION<br><br><br><br>NO. 18-54 |

## **OPINION**

Percolating through this case is the question of who is selling genuine bottled "spring" water and who is not. Plaintiff, a spring water extractor, alleges that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), and Pennsylvania's unfair competition law by mislabeling their water as "spring water." One of the Defendants extracts water and three of them bottle, sell, and label the extracted water as "spring water." Plaintiff, who is "in the spring water business," possessed a license from the Pennsylvania Department of Environmental Protection ("DEP") to operate a spring water extraction site. He alleges that Defendants' labeling of their water as "spring water" has damaged his business because the labels are designed to entice purchasers to buy Defendants' products under the false belief that their "spring water" is at least equal, if not superior, to Plaintiff's true spring water. Plaintiff brings this case as a putative class action for "[a]ll persons in the United States who, within the applicable statute of limitations preceding the filing of this action through class certification, extract and/or bottle spring water for sale in the United States," as well as a Pennsylvania subclass.

Defendants have filed Motions to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons below, Defendants' motions are granted in part and

denied in part.

I. **FACTS**

Stanley Frompovicz, doing business as Far Away Springs,[1] brings this putative class action under the federal Lanham Act, 15 U.S.C. § 1125(a), and for unfair competition under Pennsylvania law, against James Land,[2] who is engaged in the business of extracting and marketing water, as well as three water bottlers and distributors who purchase Land's water (collectively, "Defendants"). Those bottlers are Niagara Bottling Co., LLC ("Niagara"), Ice River Springs Water Co. Inc. ("Ice River"), and Crossroads Beverage Group ("Crossroads") (collectively "Bottler Defendants"). The crux of Plaintiff's Complaint is that Defendant Land sells "well water" and the Bottler Defendants market it as more desirable "spring water," thereby diminishing Plaintiff's market to sell spring water.

The following facts are taken from the Complaint. Bottled water is the second largest beverage category by volume in the United States. The success of bottled water is attributable to several factors, including consumer's perceptions about taste, healthfulness, convenience, safety, and value as compared to other bottled beverages. There are many types of bottled water, including, as relevant here, "spring water" and "well" or "tap water." Spring water typically sells at a premium compared to other bottled water, such as well water or tap water, because customers recognize and prefer the taste of spring water to other types of bottled water. However, spring water sites require substantially more resources to locate, develop, and maintain because of the unique characteristics necessary to extract the water to ensure that it remains "spring water" throughout the extraction process.

---

[1] The Plaintiff in this action is Stanley Frompovicz and not Far Away Springs.

[2] James Land is the owner and listed as manager of MC Resource Development, which also does business under the fictitious name Pine Valley Farms Springs. According to the Complaint, MC Resource Development is the alter ego of James Land.

The Bottler Defendants source their water from Defendant Land's facility and label their water as "spring water." Plaintiff asserts that the labels are misleading for four reasons. First, Pennsylvania's DEP does not recognize Defendant Land's facility as a "spring water" source. In fact, a DEP permit for Land's facility, attached as an exhibit to the Complaint, clearly identifies the site as a "well water" site, and not a "spring water" site. Second, the Complaint alleges that the raw water extracted from Land's facility does not satisfy the Food and Drug Administration's ("FDA") definition of "spring water." Third, water extracted from Land's facility has been extracted, handled, or treated with equipment or techniques that are inconsistent with a "spring water" classification. Last, water from Land's facility has tested as containing more particulates or trace elements than are otherwise permissible or recommended under industry standards for spring water.

## II. LEGAL ANALYSIS

Defendants seek to dismiss Plaintiff's complaint on the grounds that: (1) he lacks standing under Article III of the United States Constitution; and (2) because he does not have a "right to sue" under the Lanham Act. Defendants also contend that Plaintiff's Lanham Act claims are precluded, by the Food, Drug, and Cosmetics Act.

A plaintiff must demonstrate standing in order to avail itself of the jurisdiction of federal courts. *See Common Cause of Pennsylvania v. Pennsylvania,* 558 F.3d 249, 257 (3d Cir. 2009). In the context of a class action – as is the case here – if the class representative lacks standing, the court "must dismiss . . . for lack of subject matter jurisdiction." *Finkelman v. Nat'l Football League,* 810 F.3d 187, 195 (3d Cir. 2016) (citing *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 362 (3d Cir. 2015)). Standing is, thus, a "bedrock requirement" that must be met before a court can reach the merits of a suit. *In re Schering Plough Corp. Intron/Temodar Consumer*

*Class Action,* 678 F.3d 235, 244 (3d Cir. 2012); *see also Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016) (holding that Article III standing is a "threshold issue").

### A. Standard of Review

A motion to dismiss for lack of Article III standing comes in the form of a "facial" or "factual" attack on the Court's subject-matter jurisdiction. The distinction is important because it determines how the pleading must be reviewed. *See In re Schering Plough*, 678 F.3d at 243. "[A] facial attack 'contests the sufficiency of the pleadings' 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *See Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (internal citations omitted). Moreover, a defendant may mount a factual attack only after filing an answer. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 (3d Cir. 1977) ("A factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted."). Defendants here have not yet answered the Complaint. Therefore, each of their Motions to Dismiss is "by definition, a facial attack." *Aichele*, 757 F.3d at 358.

A facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)." *Id*. Thus, in reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.*[3]

---

[3] Defendants ask the Court, in ruling on the standing issue, to consider pleadings from another matter Plaintiff is currently litigating against the DEP and a letter from the United States Food and Drug Administration ("FDA") which Defendants contend show that Defendant Land's water is spring water. They argue that these documents may be considered because they are public records which are an exception to the general rule restricting review to the face of the complaint. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993). Assuming for now that these documents are public records, the exception *allows* a court to consider them, but does not *require* a court to do so. *Id.* While these documents may assume significance at a later stage of the proceedings, here where the parties argue over their factual import and significance, it is inappropriate to consider them.

### B. Article III standing

Turning, first to Defendants' challenge to Article III standing: A plaintiff has Article III standing if he has "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Defendants' position is that Plaintiff cannot meet prongs one and two of the standing inquiry, which will be addressed, *seriatim*.

#### i. Injury-in-fact

The injury-in-fact element requires that the party seeking relief "be himself among the injured." *Lujan,* 504 U.S. at 562 (internal quotation mark omitted). At the motion to dismiss stage, "[t]he contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege[] some specific, identifiable trifle of injury." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (emphasis omitted) (citation and internal quotation marks omitted). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561. Thus, while a plaintiff must eventually prove an injury, he need only allege the existence of such an injury at this stage.

"[T]he Supreme Court has repeatedly recognized that financial or economic interests are 'legally protected interests' for purposes of the standing doctrine." *Cottrell v. Alcon Labs.*, 874 F.3d 154, 164 (3d Cir. 2017). In *Lexmark v. Static Control Components Inc.*, a watershed opinion in the analysis of this case, it considered whether a supplier of printer toner replacement parts had standing to challenge a toner cartridge manufacturer's allegedly false and misleading

marketing and found that "allegations of lost sales and damage to its business reputation [confer] standing under Article III." 134 S. Ct. 1377, 1386 (2014). Plaintiff's Complaint alleges that "Defendants' marketing and sale of their deceptively marketed 'spring water' is damaging to the reputation and goodwill of Plaintiff," and that Defendants' actions hindered his sales. Thus, Plaintiff has sufficiently alleged a legally protected interest, and, thus, an injury-in-fact sufficient to confer standing.

While all parties agree that the DEP suspended Plaintiff's license to extract water in 2015, that fact is water under the bridge on the question of standing on the facts alleged here. The statute of limitations for a claim under the Lanham Act is six years. *See Santana Prod., Inc. v. Bobrick Washroom Equip., Inc*., 401 F.3d 123, 135 (3d Cir. 2005). Plaintiff filed this action on January 8, 2018. And the Bottler Defendants admit that Plaintiff sold water at least until 2015. Therefore, Plaintiff has adequately alleged an actual injury within the statute of limitations at least from January 8, 2012 until the DEP suspension in 2015. Further, the fact that Plaintiff's license has been suspended is not dispositive: a closed company is not necessarily precluded from maintaining an action under the Lanham Act. *See Lexmark*, 134 S. Ct. at 1391. Thus, notwithstanding the license suspension, Plaintiff has adequately alleged an injury-in-fact.

The DEP suspension does, however, affect Plaintiff's access to injunctive relief. A "plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 185 (2000). Where a party seeks injunctive relief, past exposure to illegal conduct is insufficient to establish standing. The party must also assert "continuing, present adverse effects." *Lujan*, 504 U.S. at 564. In this case, Plaintiff has admitted that he is not currently selling water, and though he stated during oral argument that he intends to re-enter the industry, there are no facts in support of that assertion contained in the

Complaint. Therefore, Plaintiff's claim for injunctive relief will be dismissed without prejudice to amend.

## ii. *Whether the injury is fairly traceable to the challenged conduct*

The second element of the Article III inquiry requires a court to consider whether an injury is "fairly traceable to the challenged conduct of the defendant." *Spokeo,* 136 S. Ct. at 1540 (citing *Lujan,* 504 U.S. at 560 (1992)). In this case, Defendant Land allegedly extracts well water and Defendants Niagara, Crossroads, and Ice River allegedly bottle such water with labels that indicate that it is "spring water." Since consumers prefer spring water, it is reasonable to infer under the analytical rubric of a motion to dismiss that Defendant Land's sales siphoned sales away from Plaintiff. In fact, Plaintiff alleges that the misleading labels depressed his own sales by falsely equating his product with Defendant Land's. Taking these allegations as true, Plaintiff has sufficiently alleged that his injuries are traceable to Defendants' conduct.

With reference to DEP's suspension, Defendants argue that Plaintiff's injuries are caused by the DEP, and not by Defendants. But this argument misconstrues Plaintiff's alleged injuries. The Court does not understand Plaintiff to be arguing here that Defendants' Lanham Act violations caused him to shut down. Rather, the Complaint states it is "Defendants' wrongful conduct [that] has resulted in increased sales of their own deceptively labeled 'spring water,' hindering sales of Plaintiff's and other Class members' true spring water." Furthermore, even if the DEP's suspension caused Plaintiff to shut down in 2015, it is still possible that Defendants' Lanham Act violations depressed sales prior to 2015. And as the Supreme Court cautioned, the "fairly traceable" element for standing does not require defendant's actions [to be] the very last step in the chain of causation." *Aichele*, 757 F.3d at 366 (quoting *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997)).

7

Defendants' citation to *Maine Springs, LLC v. Nestle Waters North America, Inc.*, an unpublished out-of-circuit, district court case, even if it were to have any precedential value at all, is distinguishable. 2015 WL 1241571 (D. Me. 2015). In that case, the plaintiff, who was also allegedly in the spring water business, had never sold a single bottle of water. The plaintiff alleged that the defendant, who supposedly represented its well water as spring water, hindered the plaintiff's capacity to enter the spring water bottle market. And in *Joint Stock Soc'y v. UDV N. Am., Inc.*, another case cited by Defendants, the Third Circuit held that a Russian vodka producer could not state a claim under the Lanham Act against an American vodka producer because the plaintiff "ha[s] never marketed any vodka in the United States and ha[s] not adduced any evidence establishing that they are prepared at this time to sell any vodka in this country. . . ." 266 F.3d 164, 176 (3d Cir. 2001) (dismissing claims on summary judgment).[4] Both of these cases stand for the proposition that a Lanham Act plaintiff must allege more than intent to enter a market to state a claim.

The facts of those cases are a far cry from the present allegations. First, unlike the plaintiffs in those cases who merely *planned* to enter their respective industries, Frompovicz alleges that he "*is* in the spring water business." Second, Niagara admits to purchasing water from Plaintiff prior to 2015.[5] Although Plaintiff's Complaint does not contain the allegation that he sold spring water in the past, Defendants' admission is enough to permit Plaintiff's claims to move forward. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 & n.20 (3d Cir. 2006)

---

[4] Defendants' citation to *Ford v. NYLCare Health Plans of Gulf Coast, Inc*., 301 F.3d 329, 333 (5th Cir. 2002) is also inapposite. In that case, the court dismissed plaintiff's Lanham Act claim on a motion for summary judgment because the plaintiff presented no evidence "affirmatively proving that the reduction in his income was a consequence" of the defendants' Lanham Act violations. *Id*. The standard is different on a motion to dismiss, and at this stage, Plaintiff's allegations of diminished business must be taken as true.

[5] Specifically, Niagara states in its brief that "prior to 2015, Niagara was Frompovicz's customer and bottled and advertised his water." ECF No. 19 at 7.

(citations omitted) (noting that factual concessions in a brief are binding judicial admissions). Third, the Complaint shows that Plaintiff obtained a license, at some point, to extract spring water. Taken together, these facts demonstrate that Plaintiff has sufficiently alleged an injury fairly traceable to the challenged conduct. Thus, Defendants' motion to dismiss for lack of Article III standing shall be denied.

### C. Right to Sue Under the Statute

Whether Plaintiff has a right to sue under the Lanham Act is an entirely different question.[6] That question is resolved by determining whether the Plaintiff has sufficiently alleged that: (1) he comes within "the zone of interest" implicated by the statute; and, (2) that the Defendants' conduct proximately caused his damages. *Lexmark*, 134 S. Ct. at 1389-90. In *Lexmark*, which was an appeal of a motion to dismiss under Rule 12(b)(6), the Court held that "to come within the zone of interests in a suit for false advertising under [the Lanham Act], a plaintiff must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising." *Id.* at 1390. Thus, a consumer or a business misled by a supplier into purchasing an inferior product may not bring a Lanham Act claim. In addition, the Lanham Act is "limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Id.*

The conceptual distinction between Article III standing and the "right to sue" test is as follows: Whereas Article III standing requires an "injury-in-fact," "right to sue" under the Lanham Act requires some kind of injury to a "commercial interest." *Id*. Furthermore, whereas Article III standing requires that injury be "fairly traceable" to the challenged conduct, "right to sue" under the Lanham Act requires that the injury be "proximately caused," by the Defendants'

---

[6] Although the parties discuss this issue in terms of "prudential" or "statutory standing," the Supreme Court has explained that those terms are a "misnomer" or "misleading." *Lexmark*, 134 S. Ct. at 1385-86. The Supreme Court, instead, used the concept of the "right to sue."

challenged conduct. *Id.* at 1391.[7]

   i.   *Zone of Interest Test*

As to the first prong of the "right to sue" inquiry, a Plaintiff must have "interests within the zone of interests protected by the law invoked." *Id*. at 1388. The inquiry focuses on "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id*. at 1390. This requires an analysis of the "conduct the statute prohibits."

As with all statutory interpretation inquiries, the text is the first place to look. Here, "[i]dentifying the interests protected by the Lanham Act . . . requires no guesswork" because the statute included a detailed statement of its purpose. *Id.* at 1390. The statement shows that the purpose of the Lanham Act is to "mak[e] actionable the deceptive and misleading use of marks in . . . commerce." 15 U.S.C. § 1127. From this statement, the Supreme Court clarified that by passing the Lanham Act, Congress meant to protect businesses from "injuries to business reputation and present and future sales" as a result of false advertising. *Lexmark*, 134 S. Ct. at 1389. Thus, to come within the zone of interest, a Plaintiff must state an injury to a "commercial interest," as opposed to an injury to a consumer interest. *Id.* at 1390.

Plaintiff's allegations that his spring water sales were depressed as a result of Defendants' misleading labels come within the "zone of interests" invoked by the Lanham Act. These allegations have sufficient factual support in order to withstand a challenge under Rule 12(b)(6). Specifically, the allegations in the Complaint are: "Businesses such as Plaintiff's have spent significant time, money, and resources to identify, develop, and maintain spring water

---

[7] While Defendants argue that this inquiry is jurisdictional, the Supreme Court has held otherwise. *Id.* at 1388. The Supreme Court granted certiorari in *Lexmark* to decide "the appropriate analytical framework for determining a party's standing to maintain an action for false advertising under the Lanham Act." *Id*. at 1386. "The Court clarified that the zone-of-interests requirement goes to whether a particular plaintiff has a cause of action under a given law, not a plaintiff's standing." *Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 105 (3d Cir. 2015).

10

sites;" "Defendants' marketing and sale of [spring water] is damaging to the reputation and goodwill of Plaintiff. . . ;" "Defendants' wrongful conduct has resulted in increased sales of their own [spring water], hindering sales of Plaintiff's [spring water];" and "Plaintiff, like all Class members, is in the spring water business." Accepting those facts as true and drawing all reasonable inferences in favor of the Plaintiff, it is plausible that the Bottler Defendants would have purchased more spring water from Plaintiff than water from Defendant Land had the labels indicated that Land's water was other than spring water. *See Industria de Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, 2017 WL 6940696, at *17 (D.N.J. 2017) (finding similar allegations sufficient to withstand 12(b)(6) challenge post-*Lexmark*). Thus, Plaintiff has satisfied the zone of interest test.

    ii.    *Proximate Cause Test*

As to the proximate cause test, Plaintiff must demonstrate that his injuries are not "too remote" from the Defendants' violations of the Lanham Act. In *Lexmark*, the Supreme Court recognized that what exactly that means is not easy to define, but explained that "[t]he question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark,* 134 S. Ct. at 1390. Although it did not provide a question-specific analytical rubric, it noted that "courts have a great deal of experience applying [proximate cause analysis], and there is a wealth of precedent for them to draw upon in doing so," and instructed that tort law concepts of negligence should be considered when analyzing whether there is proximate causation. *See id.* (citing tort cases including *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830 (1996)). Furthermore, in concluding its discussion of proximate causation, the Supreme Court stated that a Lanham Act plaintiff "ordinarily must show economic or reputational injury *flowing directly* from the deception wrought by the defendant's advertising."

*Id.* (emphasis added).

Here, Plaintiff's alleged economic and reputational injury flows directly from the activities of Defendant Land. All parties concede that Plaintiff was, until recently, actively sourcing, extracting, and selling spring water to bottlers. Defendant Land is in the exact same business. He is thus a direct competitor. Plaintiff alleges that Defendant Land "fraudulently and deceptively markets and sells the raw water extracted at Pine Valley Farms Springs as 'spring water.'" There is no intervening causal agent between Defendant Land's conduct – the "deceptive" sale *to bottlers* – and Plaintiff's diminished sales *to bottlers*; both are selling what they call "spring water" to bottlers.[8] Thus, Plaintiff has alleged a viable theory of proximate harm from Defendant Land's actions.

The question is more complicated when it comes to the Bottler Defendants who are not in direct competition with Plaintiff: He sells his product to bottlers and then the bottlers sell to consumers. The question is whether this extra step in the chain of causation takes Plaintiff's Lanham Act claim one step beyond viability.

As a preliminary matter, a Lanham Act claim is not prohibited against indirect competitors. Prior to *Lexmark,* some circuit courts had limited recovery under the Lanham Act to direct competitors, but in *Lexmark*, the Supreme Court held "a rule categorically prohibiting all suits by non-competitors would read too much into the Act's reference to 'unfair competition.'" *See Lexmark,* 134 S. Ct at 1392; *see also Handsome Brook Farm, LLC v.*

---

[8] The cases Defendant Land – and other Defendants – cite to suggest Plaintiff's injuries are not caused by Land's actions are unavailing. In those cases, the courts dismissed Lanham Act violations from companies who planned to enter the defendants' market, but did not. *See Maine Springs,* 2015 WL 1241571 (D. Me. 2015); *Pulse Health LLC,* 2017 WL 1371272, at *7 (collecting cases dismissing Lanham Act claim where plaintiffs planned to enter the respective markets); *Think Computer Corp. v. Dwolla, Inc*., 2014 WL 1266213, at *3 (N.D. Cal. 2014) (dismissing Lanham Act claim where violations occurred after Plaintiff shut down); *see also Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271 (E.D. Pa. 2016) (dismissing a Lanham Act claim against a magazine that published an allegedly false statement about the plaintiff's toy collection because, among several problems, the publication occurred *after* the auction so plaintiff's injuries could not have been caused by defendants' conduct).

*Humane Farm Animal Care, Inc*., 193 F. Supp.3d 556, 569 (E.D. Va. 2016), *aff'd*, 700 F. App'x 251 (4th Cir. 2017) ("As a legal matter, a direct-competitor relationship is not necessary to sustain a false advertising claim under the Lanham Act.").[9] However, in doing so, the Supreme Court suggested that in cases alleging liability based on indirect injuries, more particularized allegations are required. Specifically, the Court stated that a Lanham Act claim asserting indirect injuries is only viable in "relatively unique circumstances." *Id.* at 1394.

In order to understand the contours of those "relatively unique circumstances," additional background of the *Lexmark* case is necessary. The Lanham Act-Defendant, Lexmark, manufactured printer toner cartridges. Lexmark allegedly misled consumers "to believe [they] were legally bound . . . to return the [cartridges] to Lexmark after a single use." *Id.* at 1384. The Lanham Act Plaintiff, Static Control, was not a manufacturer or remanufacturer of toner cartridges and therefore it was not a direct competitor with Lexmark. Instead, Static Control, supplied remanufacturers (*i.e.* Lexmark's competitors) with replacement parts to create products to compete with Lexmark. The Supreme Court allowed the claim to proceed because of specific factual allegations that attributed Static Control's loss to Lexmark's actions, notwithstanding the break in the causal chain between manufacturer and supplier. Those allegations were that remanufacturers sold "10,000 fewer refurbished cartridges because of Lexmark's false advertising" and that a one-to-one correspondence existed between lost sales for remanufacturers and lost sales for Static Control.

---

[9] In *Lexmark*, the Supreme Court specifically abrogated the five factor test used by the Third Circuit in *Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.,*165 F.3d 221, 233 (3d Cir. 1998) to determine whether a plaintiff had a right to sue under the Lanham Act. It was concerned that the test could not only be applied to prevent indirect competitors from Lanham Act recovery but also because it "can yield unpredictable and at times arbitrary results." *Lexmark*, 134 S. Ct. at 1392 (citing Tushnet, *Running the Gamut from A to B: Federal Trademark and False Advertising Law*, 159 U. Pa. L. Rev. 1305, 1376-1379 (2011)).

The question here is whether Plaintiff's Lanham Act claim alleges a theory of indirect harm, and, if so, whether Plaintiff has alleged sufficient factual allegations to fall within the "relatively unique" set of circumstances where such a claim of indirect injury is viable.

The Court, in *Lexmark,* provided two reasons for classifying Static Control's injury as "indirect." First, Static Control and Lexmark were one step removed in the distribution chain of printer cartridges. Second, the Supreme Court held that Static Control's injury was indirect because it "includes the intervening link of injury to the remanufacturers." *Lexmark,* 134 S. Ct. at 1394. Both of these factors show that Plaintiff's injury is also indirect with respect to the Bottler Defendants. First, Plaintiff and the Bottler Defendants are also one step removed in the spring water distribution chain. Second, there is an intervening causal agent between the Bottler Defendants' actions and Plaintiff's lost sales: consumers. The allegations in the Complaint are that the Bottler Defendants label their water bottles as "spring water" when the bottles actually contain well water, and that this mislabeling is "intended to give consumers the impression that the water is derived" from a spring, when it is not. Those mislabeled bottles are purchased by consumers. However, Plaintiff does not sell to consumers.[10] He sells to bottlers. Plaintiff's harm from the Bottler Defendants' action is, thus, indirect, and requires additional factual allegations under *Lexmark*. *See Lexmark,* 134 S. Ct. at 1391 ("[T]he intervening step of consumer deception is not fatal to the showing of proximate causation required by the statute.").

In *Lexmark*, Static Control was able to satisfy this burden by alleging facts such as a one-to-one correspondence between loss to remanufacturers and loss to Static Control as a supplier. In *Handsome Brook*, the Plaintiff was able to satisfy that burden because the defendant, who was not in the same distribution level, alleged direct disparagement in an email to many of the defendants' customers. *Handsome Brook*, 193 F. Supp.3d at 569; *see also Luxul Tech. Inc. v.*

---

[10] Although this fact is not in the Complaint, Plaintiff conceded this to be the case at oral argument.

14

*Nectarlux, LLC*, 78 F. Supp.3d 1156, 1165 (N.D. Cal. 2015) (alleging claim of false disparagement as well).[11] In both cases, the additional factual allegations were sufficient to attribute the Plaintiff's loss to the Defendants' actions.

In this case, Plaintiff's Complaint has a paucity of allegations connecting his own lost sales with the Bottler Defendants' actions. Absent such allegations, Plaintiff's Lanham Act claim will be dismissed against the Bottler Defendants without prejudice to amend.

### III.  FDCA and Lanham Act Preclusion

Because Defendant Land's Motion to Dismiss will not be granted, it is necessary to address Defendants' final argument – that Plaintiff's claims are precluded by the Food, Drug, and Cosmetic Act ("FDCA"). Unlike the Lanham Act, the FDCA does not contain a private right of action. *See Buckman v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 349 n.4 (2001) ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with [FDA regulations].").

By way of background, the FDCA establishes basic definitions for food and beverages as well as labeling requirements. *See* 21 U.S.C. § 301, *et seq*. In relevant part, the FDCA provides that "a food shall be misbranded . . . [i]f it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations . . . unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard. . . ." 21 U.S.C. § 343(g). Pursuant to its rulemaking authority under the

---

[11] Plaintiff also cites *AFL Philadelphia LLC v. Krause,* 639 F. Supp.2d 512 (E.D. Pa. 2009), a peculiar case in which a minor league football team sent an email notifying season ticketholders that it cancelled the remainder of its season from the Lanham Act-Plaintiff's email address without permission. The district court permitted the Lanham Act claim to proceed even though the Plaintiff, the Director of Sales for the team, was not in competition with the football arena. The case precedes *Lexmark* and is therefore of questionable viability. But, it is also highly fact-specific. The Lanham Act Plaintiff was a well-known Director of Sales and he alleged that his reputation suffered when the football team sent the email cancelling its season from his own personal email address without permission.

FDCA, the FDA has defined "spring water" explicitly. *See* 21 C.F.R. § 165.110(a)(2)(vi).[12]

Defendants argue that these regulations preempt the Lanham Act with respect to "spring water" labeling. The Supreme Court's recent decision in *POM Wonderful LLC v. Coca-Cola Co.* is to the contrary. 134 S. Ct. 2228 (2014). The Supreme Court clarified that the FDCA generally does not preclude Lanham Act claims based on false labeling. *See Id.* at 2238-39. In that case, the plaintiff claimed that although the defendant's pomegranate juice comported with FDCA labeling requirements concerning juices, it was still misleading because the juice was only .3% pomegranate. The Court held that the FDCA and the Lanham Act "complement each other with respect to labeling." *Id.* at 2232. While "[e]nforcement of the FDCA and the detailed prescription of its implementing regulations is largely committed to the FDA, [the FDA] does not have the same perspective or expertise in assessing market dynamics that day-to-day competitors possess." *Id.* at 2238. The Second Circuit summarized the holding of *POM Wonderful* succinctly: Compliance with FDA regulation "does not create a ceiling that bars still better protections against the capacity of the representations to mislead." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 64 (2d Cir. 2016). Therefore, compliance with the FDCA does not preclude liability under the Lanham Act.

Defendants assert that *POM Wonderful* is distinguishable because it dealt with the definition of juice mixtures and the present case involves the definition of spring water.

---

[12] According to the FDA, "the name of water derived from an underground formation from which water flows naturally to the surface of the earth may be "spring water." Spring water shall be collected only at the spring or through a bore hole tapping the underground formation feeding the spring. There shall be a natural force causing the water to flow to the surface through a natural orifice. The location of the spring shall be identified. Spring water collected with the use of an external force shall be from the same underground stratum as the spring, as shown by a measurable hydraulic connection using a hydrogeologically valid method between the bore hole and the natural spring, and shall have all the physical properties, before treatment, and be of the same composition and quality, as the water that flows naturally to the surface of the earth. If spring water is collected with the use of an external force, water must continue to flow naturally to the surface of the earth through the spring's natural orifice. Plants shall demonstrate, on request, to appropriate regulatory officials, using a hydrogeologically valid method, that an appropriate hydraulic connection exists between the natural orifice of the spring and the bore hole." *Id.*

However, the Court's decision was not narrowly limited to the juice labeling context and has not been so read. By way of illustration, it has been applied to permit a claim against a dietary supplement distributor for false labeling of food and pet food labeling as well. *See Thermolife Int'l LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 612 (9th Cir. 2016) ("*POM Wonderful* established that the FDCA generally does not preclude Lanham Act claims for false labeling of food."); *Blue Buffalo Co. v. Nestle Purina Petcare Co.*, 2015 WL 3645262 (E.D. Mo. 2015) (same, involving pet food).

Nevertheless, there is at least one instance in which the FDCA might preclude a Lanham Act claim under *POM Wonderful*. Despite the broad language of *POM Wonderful,* the Supreme Court suggested that a Lanham Act claim might be precluded if it conflicted with "an agency judgment." *See POM Wonderful*, 134 S. Ct. at 2241; *see also JHP Pharm., LLC v. Hospira, Inc.*, 52 F. Supp.3d 992, 998 (C.D. Cal. 2014) ("The Court further suggested . . . that a Lanham action might be barred where . . . the Plaintiff's grounds for the Lanham Act claim otherwise conflict with an affirmative policy judgment by the FDA."). In *PhotoMedex, Inc. v. Irwin*, albeit a pre-*POM Wonderful* case, the Ninth Circuit held that a Lanham Act claim would be precluded where it "would require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was such a violation." 601 F.3d 919, 924 (9th Cir. 2010).

Following *POM Wonderful,* many district courts have navigated "the tightrope between permitted and precluded Lanham Act claims." *See Hi-Tech Pharm., Inc. v. Hodges Consulting, Inc.*, 230 F. Supp.3d 1323, 1331 (N.D. Ga. 2016); *Nutrition Distribution LLC v. Custom Nutraceuticals LLC*, 194 F. Supp.3d 952, 956 (D. Ariz. 2016) (declining to determine whether the sale of a drug violated the FDCA, but permitting the Lanham Act claim to proceed on

narrower grounds); *JHP Pharm.,* 52 F. Supp. 3d at 992.  In *JHP,* the court dealt with an allegation that defendants sold epinephrine products that were not approved under the FDCA, and therefore violated the FDCA.  The court stated that, "the determination of whether a drug is 'new' . . . involves complex issues [under the FDA's purview].  That does not mean however that an allegation of illegality under the FDCA could *never* form the basis of a successful Lanham Act claim. . . . [W]here the court is not called upon to make determinations within the exclusive purview of FDA authority, a Lanham Act claim may be heard, even if the subject of the claim touches the area of authority of the FDCA."  *Id.* at 1004.  And in *Hi-Tech*, the court precluded a Lanham Act claim alleging that a dietary supplement violates the FDCA, but permitted a Lanham Act claim to proceed alleging that labeling the product as a "natural dietary supplement" is misleading because it contains Schedule III steroids.  *See Hi-Tech Pharm*, 230 F. Supp. at 1331; *see also Nutrition Distribution*, 194 F. Supp.3d at 956 (similarly permitting Lanham Act claims to proceed on narrower grounds);

The Complaint here contains no allegation that the FDA has made an affirmative judgment as to whether Land's water falls within its definition of spring water.  Indeed, it specifically alleges that Land's water is not spring water.  Accepting that allegation as true, the Plaintiff's Lanham Act claim is not precluded by the FDCA.

### IV. Pennsylvania Unfair Competition Statute

Last, Defendants also move to dismiss Plaintiff's claims under Pennsylvania's unfair

competition statute for three reasons.[13] First, Defendants argue that the statute of limitations for the tort of unfair competition is two years in Pennsylvania and Plaintiff has not sold water since 2015. *See Harry Miller Corp. v. Mancuso Chem. Ltd.*, 469 F. Supp.2d 303, 317 (E.D. Pa. 2007). The statute of limitations, however, is an affirmative defense and a complaint may only be dismissed on the grounds of statute of limitations when it apparent on the face of the complaint that the claim is outside the limitations period. *See Wisniewski v. Fischer,* 857 F.3d 152, 157 (3d Cir. 2017). In this case, Defendants rely on statements in a pleading from state court or concessions in response to the Motion to Dismiss, which are outside of the four corners of the complaint and may not be considered at this time.

Second, Defendants argue that Plaintiff must allege that he is in competition with the defendant – "that is, that plaintiff and the defendant supply similar goods or services." *See, e.g. Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 319 (3d Cir. 1995). However, an analysis of the Pennsylvania common law cause for unfair competition "is virtually the same" as the Lanham Act. *Flynn v. Health Advocate, Inc.*, 169 F. App'x 99, 101 (3d Cir. 2006); *see also Harp v. Rahme*, 984 F. Supp.2d 398, 410 (E.D. Pa. 2013), *aff'd without opinion,* (3d Cir. No. 13-4808, Aug. 13, 2014) "[t]he requirements of a Pennsylvania unfair competition claim mirror those of a Lanham Act claim, but without the additional federal requirement of interstate commerce." The Third Circuit has stated that Therefore, following the Court's earlier analysis of Plaintiff's Lanham Act claim, Plaintiff's state law claim will be dismissed against the Bottler

---

[13] After briefing closed and argument was had on the motion to dismiss, Niagara submitted a letter to the Court suggesting a fourth reason to dismiss Plaintiff's unfair competition claims. It suggested that the Court should adopt the reasoning of *Patane v. Nestle Waters N. Am., Inc.*, a District of Connecticut opinion, analyzing allegations that Nestle's Poland Springs Water did not comply with the FDCA's definition of "spring water," in which they court dismissed on preemption grounds state law claims of unfair trade practices. 2018 WL 2271161 (D. Conn. 2018). The Court declines to do so given the non-precedential nature of the opinion and absent more in depth briefing by the parties which, no doubt will be forthcoming given that Plaintiff will have an opportunity to amend his Complaint and the Defendants are likely take the opportunity to raise the argument in a future motion.

Defendants without prejudice, but not against Defendant Land.

    A separate order follows.

                                      **BY THE COURT:**

                                      **/S/WENDY BEETLESTONE, J.**

                                      **_____**

                                      **WENDY BEETLESTONE, J.**

**May 24, 2018**