# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STANLEY F. FROMPOVICZ,**<br>Plaintiff,<br><br>v.<br><br>**NIAGARA BOTTLING, LLC, ICE RIVER SPRINGS WATER CO, INC., CROSSROADS BEVERAGE GROUP AND JAMES J. LAND, JR.,**<br>Defendants. | CIVIL ACTION<br><br><br><br><br>NO. 18-54 |

## MEMORANDUM OPINION

This dispute bubbles up before this Court again, presenting the question of who is selling genuine bottled "spring" water and who is not. *See Frompovicz v. Niagara Bottling, LLC*, 313 F.Supp.3d 603 (E.D. Pa 2018). Plaintiff, a water extractor, alleges that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), and Pennsylvania's unfair competition law by mislabeling their water as "spring water." One of the Defendants extracts water and three of them bottle, sell, and label the extracted water as "spring water." As a licensed extractor of spring water, Plaintiff alleges that Defendants' labeling of their non-spring water as "spring water" has damaged his business because the labels are designed to entice purchasers to buy Defendants' products under the false belief that their "spring water" is at least equal, if not superior, to Plaintiff's true spring water. Plaintiff brings this case as a putative class action for "[a]ll persons in the United States who, within the applicable statute of limitations preceding the filing of this action through class certification, extract and/or bottle spring water for sale in the United States," as well as a Pennsylvania subclass.

Defendants have filed Motions to Dismiss under Federal Rules of Civil Procedure 12(b)(6). For the reasons below, Defendants' motions are granted in part and denied in part.

I.   FACTS

The following facts come from the Amended Complaint. Plaintiff is Stanley Frompovicz, who operates a spring water extraction business as Far Away Springs.[1] Defendants are James Land,[2] who is also engaged in the business of extracting and marketing water, and three water bottlers and distributors who purchase Land's water, namely Niagara Bottling Co., LLC ("Niagara"), Ice River Springs Water Co. Inc. ("Ice River"), and Crossroads Beverage Group ("Crossroads") (collectively "Bottler Defendants").

The gist of Plaintiff's claim is that Defendant Land fraudulently markets and sells "well water" as the more desirable "spring water" to the Bottler Defendants, who turn around and knowingly sell the spuriously labeled water to consumers, thereby diminishing Plaintiff's market to sell legitimate spring water to bottlers and consumers alike. The marketing and labeling is misleading, according to the Complaint, for four reasons. First, Defendant Land's water "does not satisfy the FDA's definition of 'spring water.'" Second, Defendant Land's facility is permitted by the Pennsylvania Department of Environmental Protection (DEP) as a "well water" site, and not a "spring water" site. Third, water extracted from Land's facility "has been extracted, handled, or treated with equipment or techniques that are inconsistent with a 'spring water' classification criteria." Last, water from Land's facility "has tested as containing more particulates or trace elements than are otherwise permissible or recommended under industry standards for 'spring water.'"

Plaintiff alleges he suffered commercial harm as a result of the misleading marketing and labeling. Defendants Niagara and Ice River sourced spring water from Plaintiff before switching

---

[1] The Plaintiff in this action is Frompovicz and not Far Away Springs.

[2] Land is the owner and listed manager of MC Resource Development, which also does business under the fictitious name Pine Valley Farms Springs. According to the Amended Complaint, MC Resource Development is the alter ego of James Land.

to Defendant Land's water in 2009 and 2013 respectively, resulting in lost sales for Plaintiff. And in 2014, Defendant Crossroads considered purchasing Plaintiff's spring water before choosing to source from Defendant Land instead. In addition, the Complaint alleges that Plaintiff "also bottled his own spring water and directly sold it to customers."

Finally, the Complaint also alleges that Defendants Land and Niagara falsely disparaged Plaintiff's products, thus further harming his commercial interests.

## II. PROCEDURAL HISTORY

Plaintiff filed an initial Complaint in January of 2018. Defendants filed Motions to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court dismissed the Lanham and state law claims against the Bottler Defendants without prejudice, but not against Defendant Land. *Frompovicz*, 313 F.Supp.3d at 607. This Court also held that Plaintiff's Lanham Act claims were not precluded by the Food, Drug, and Cosmetics Act (FDCA). *Id.* at 616. Plaintiff filed an Amended Complaint in June of 2018 and Defendants again filed Motions to Dismiss under Federal Rules of Civil Procedure 12(b)(6).

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615

F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555). In analyzing a motion to dismiss legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made whether those facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210-11 (3d Cir. 2009*).*

## IV. DISCUSSION

Defendants advance two separate arguments in their Motions to Dismiss. First, Defendants argue Plaintiff lacks a "right to sue" under the Lanham Act and, because the Pennsylvania common law cause of action for unfair competition is "virtually the same" as the Lanham Act, the Complaint should be dismissed in its entirety. *Flynn v. Health Advocate, Inc.*, 169 F. App'x 99, 101 (3d Cir. 2006). Second, Defendants argue that, whatever the merits of the Lanham Act claim, Plaintiff's state law claims are preempted by the FDCA. These two arguments are addressed in turn.

### A. Lanham Claim

The Lanham Act "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising." *Lexmark Inter., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). Despite the statute's expansive language, the Court explained in *Lexmark* that potential plaintiffs must make a more particularized showing to establish a statutory cause of action under Section 1125(a). *Id.* To survive a motion to dismiss under 12(b)(6), Plaintiff must sufficiently allege that: (1) he comes within "the zone of interest" implicated by the statute; and, (2) that the Defendants' violation of the statute proximately

4

caused his damages.[3] *Id.* at 129-34.

       i.      *Zone of Interest Test*

As the Court explained in *Lexmark*, "to come within the zone of interests in a suit for false advertising under Section 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131-32. Plaintiff alleges he suffered both loss of sales and reputational harm from Defendants' violation of 1225(a).

First, the allegations that Plaintiff's spring water sales were depressed as a result of Defendants' misleading labels come within the "zone of interests" protected by the Lanham Act. The specific allegations in the Amended Complaint are: "Businesses such as Plaintiff's have spent significant time, money, and resources to identify, develop, and maintain spring water sites;" "Defendants' marketing and sale of their deceptively marketed 'spring water' is damaging to the reputation, goodwill, and business of Plaintiff. . . ;" "Defendants' wrongful conduct has resulted in increased sales of their own [spring water], hindering sales of Plaintiff's [spring water];" and "Plaintiff . . . is in the spring water business." Accepting those facts as true and drawing all reasonable inferences in favor of the non-moving party, Plaintiff plausibly alleges that the Bottler Defendants would have purchased more spring water from Plaintiff had Defendant Land's labels indicated that his water was other than spring water. *See Industria de*

---

[3] To bring a viable Lanham Act claim, a plaintiff must also allege that false or misleading advertisement was "use[d] in commerce." 15 U.S.C. §1125(a) (1) (B). Defendant Land contends that Plaintiff failed to adequately allege facts to meet the "in commerce" requirement, a term which, as used in the Act, refers to "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1227. "The commerce requirement has been broadly interpreted." *U.S. Healthcare, Inc. v. Blue Cross*, 898 F.2d 914, 922 (3rd Cir. 1990), to include even "purely intrastate activity if that activity substantially affects interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995).

    Plaintiff alleges Defendant Land is in the business of spring water extraction and serves "customers throughout the northeast United States." Moreover, Plaintiff alleges Defendant Land, along with the Bottler Defendants, "collectively have extracted, bottled, and sold non-spring water . . . as 'spring water'" to customers. Bottled water is the "No. 1 beverage product in the United States," with sales topping $18 billion a year. Defendant Land's extraction and sale of water to bottlers which then distribute bottled water across the country is the type of activity that "substantially affects interstate commerce." Plaintiff has therefore alleged sufficient facts to establish that Defendant used misleading advertisement "in commerce" as required by the statute.

*Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, 2017 WL 6940696, at *17 (D.N.J. 2017) (finding similar allegations sufficient to withstand 12(b)(6) challenge post-*Lexmark*).

Plaintiff also alleges that Defendants Land and Niagara made disparaging remarks about his business resulting in "injury to Plaintiff's business and reputation, including lost sales or profits." According to the Amended Complaint, Defendant Niagara "falsely told industry participants that Plaintiff should not be dealt with, and has misrepresented to the public that Plaintiff's spring water . . . is contaminated." And Defendant Land "has disparaged Plaintiff and his business on multiple occasions," including "instigat[ing] frivolous DEP investigations into Plaintiff's operations in order to unfairly stymie competition." The alleged disparagement "was an additional independent and/or cumulative basis for Plaintiff's (and other class members') lost sales, profits, or reputational injuries." The alleged reputation harm satisfies the zone of interest test because it is plausible that disparaging remarks about Plaintiff's operation cost him sales to other industry participants. *Lexmark*, 572 U.S. at 132 ("a plaintiff must allege an injury to a commercial interest in reputation or sales."); *see also Steer Mach. Tool & Die Corp. v. SS Niles Bottle Stoppers, LLC*, 2018 WL 3727387, at *3 (M.D. Pa. Aug. 6, 2018) (concluding defendant's disparaging remarks about plaintiff's business satisfied the zone of interest test).

Thus, Plaintiff has satisfied the zone of interest test.

### ii. Proximate Cause Test

The proximate cause prong requires Plaintiff to demonstrate that his injuries are not "too remote" from the Defendants' violations of the Lanham Act. *Lexmark*, 572 U.S. at 133. Although the *Lexmark* Court did not provide a precise test for the proximate cause analysis, it explained "[t]he question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id.* The Court further elaborated that a Lanham

Act plaintiff "ordinarily must show economic or reputational injury *flowing directly* from the deception wrought by the defendant's advertising." *Id.* (emphasis added). Here, the proximate cause analysis differs between Defendant Land, who is Plaintiff's direct competitor in the spring water business, and the Bottler Defendants, who are Plaintiff's consumers, so each will be taken each in turn.

### a. Defendant Land

This Court previously determined that Plaintiff's alleged economic and reputational injuries flow directly from Defendant Land's violation of the Lanham Act. *Frompovicz*, 313 F.Supp.3d at 614. Nothing in the Amended Complaint or the parties' briefings changes that determination.

Because Plaintiff and Defendant Land are direct competitors, Plaintiff's loss of sales flows directly from, and is thus proximately caused by, Defendant Land's violation of the statute. The "classic Lanham Act false-advertising claim" is one in which "one competitor directly injures another by making false statements about his own goods or the competitor's goods and thus inducing customers to switch." *Lexmark*, 572 U.S. at 137 (internal quotations omitted). Plaintiff is in the business of extracting and selling spring water to bottlers; Defendant Land is in the exact same business.[4] The Amended Complaint alleges that the Bottler Defendants ceased sourcing water from Plaintiff because Land "fraudulently and deceptively markets and sells the raw water extracted at Pine Valley Farms Springs as 'spring water'" to bottlers. Defendant Land's deceptive marketing plausibly diminished Plaintiff's sales of spring water to those very

---

[4] Defendant Land claims that he is not, in fact, a direct competitor with Plaintiff because each is subject to a different regulatory scheme under Pennsylvania law. Whether that is true or not (and Plaintiff denies that it is) is of no matter here because, at the motion to dismiss stage, a "District Court must accept all of the complaint's well-pleaded facts as true" and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Here, the Amended Complaint's factual allegations are sufficient to establish that Plaintiff and Defendant Land are direct competitors.

7

same bottlers. Plaintiff has therefore alleged a viable theory of proximate harm as to loss of sales from Defendant Land's actions.

Plaintiff has also made out a viable theory of proximate harm with regards to his reputational injuries. The *Lexmark* Court explained: "a defendant who seeks to promote his own interests by telling a known falsehood to or about the plaintiff or his product may be said to have proximately caused the plaintiff's harm." *Lexmark*, 572 U.S. at 138 (internal quotations omitted). Plaintiff alleges Defendant Land made knowingly false statements about Plaintiff's business that resulted in reputational harm. Specifically, Plaintiff claims "Land has instigated frivolous DEP investigations into Plaintiff's operations in order to unfairly stymie competition," including a 2015 incident in which Land "leveraged [his] influence over the DEP to initiate [a] frivolous contamination" investigation into Plaintiff's business, which further damaged his sales. The allegations are sufficient to make out a plausible theory of proximate cause for Plaintiff's reputational harm.

b. *Bottler Defendants*

The proximate cause analysis is more complex as to the Bottle Defendants because Plaintiff does not directly compete with them. Rather, the Bottler Defendants are Plaintiff's potential consumers: He seeks to sell his water to bottlers, who would then sell to consumers.[5]

Abrogating earlier decisions that held to the contrary, the Supreme Court in *Lexmark*

---

[5] Plaintiff's Amended Complaint does state that "[Plaintiff] has sold extracted spring water to bottlers, *and has also bottled his own spring water and directly sold it to customers*." The Court, though, does not understand the fleeting allegation to amount to a claim that Plaintiff suffered a loss directly caused by direct competition with the Bottler Defendants.

First, the Amended Complaint does not contain any additional factual allegations about Plaintiff's sale of bottled water direct to consumers. Nor does the Complaint allege that Plaintiff suffered commercial harm as a direct-to-consumer seller of bottled water. Further, Plaintiff does not argue in the pleadings that the Bottler Defendants' violation of the statute proximately caused harm to the Plaintiff as a seller of bottled water to consumers. Instead, the Amended Complaint alleges only that Bottler Defendants proximately caused Plaintiff harm as a wholesale seller of water to bottlers.

made clear that an indirect competitor may bring a viable Lanham Act claim for false advertising. *Lexmark*, 572 U.S. at 138 ("[A]lthough diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising, it is not the only type of injury cognizable under § 1125(a)."). The Court suggested, however, that an indirect competitor may struggle to satisfy the proximate cause prong absent "relatively unique circumstances." *Id.* at 140. There, the plaintiffs satisfied the proximate cause prong by alleging specific facts to establish that "any false advertising that reduced [defendant's direct competitor's] business necessarily injured [plaintiff] as well." *Id.* at 139. The alleged statutory violation thus resulted in "something very close to a 1:1 relationship between" the commercial harm suffered by the direct competitor and the commercial harm suffered by the indirect-competitor plaintiff. That is, the harm to the indirect competitor "would follow more or less automatically" from the harm to the direct competitor, without the need "for any 'speculative . . . proceedings' or 'intricate, uncertain inquiries.'" *Id.* at 140.

Although Plaintiff errs when he claims that the allegations in the Amended Complaint are "in lockstep with those in *Lexmark*," that does not end the matter because Plaintiff alleges two, alternative proximate cause theories.[6]

---

[6]The direct victims of Bottler Defendants' statutory violation are the Bottlers Defendants' direct competitors—non-party bottlers who, if not for Defendants' false advertising, would have sold more spring water to customers. As a supplier that sells water to bottlers, Plaintiff is one step removed in the spring water distribution chain and thus only an indirect victim of Bottler Defendants' Lanham Act violation. *Lexmark*, 572 U.S. at 139 ("[T]he casual chain linking [Plaintiff's] injuries to consumer confusion is not direct, but includes the intervening link of injury to the [direct competitors]."). Unlike the *Lexmark* plaintiff, however, Plaintiff does not allege facts that establish "something very close to a 1:1 relationship" between the commercial harm suffered by non-party bottlers and the commercial harm suffered by Plaintiff. Indeed, the Amended Complaint contains no facts that link the losses suffered by the Bottler Defendants' direct competitors and those suffered by Plaintiff. Thus, the "relatively unique circumstances" that dictated the outcome in *Lexmark* are not present here.

That said, while the Court in *Lexmark* concluded that the "relatively unique circumstances" of that case were *sufficient* to make out a plausible theory of proximate cause, nothing in the opinion suggests that those circumstances are *necessary* for a plausible theory of proximate cause. And, indeed, other courts have found Lanham Act claims brought by indirect competitors viable on facts that diverge from the facts of *Lexmark*. *See, e.g.*, *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 641 (S.D.N.Y. 2016) (finding a Lanham claim viable brought

9

First, Plaintiff alleges that the Defendants "disparaged Plaintiff and his business for the purpose of harming his reputation and sales." "When a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements." *Lexmark*, 572 U.S. at 138. Moreover, "when a party claims reputational injury from disparagement, competition is not required for proximate cause." *Id.* Although Plaintiff speaks of disparagement from "Defendants" generally, the Amended Complaint only contains factual allegations concerning Defendant Land (discussed above) and Defendant Niagara. There are no factual allegations to suggest that either Defendant Crossroads or Defendant Ice River disparaged Plaintiff or his business. Therefore the Motions to Dismiss will be grated as to Defendants Crossroads and Ice River on the commercial disparagement claim.

As to Defendant Niagara, the Amended Complaint alleges the bottler "misrepresented to the public that Plaintiff's spring water from his Auburn spring is contaminated" and references a June 22, 2015 public statement made by Niagara concerning the alleged incident. As a result of the remarks, Plaintiff alleges he "lost sales or profits from his Auburn and Brandonville springs." The allegations are sufficient to make out a plausible theory of proximate cause for commercial disparagement.[7]

---

by an online retailer of mattresses against an online reviewer of mattresses); *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 193 F.Supp.3d 556, 569 (E.D. Va. 2016), *aff'd*, 700 F. App'x 251 (4th Cir. 2017) ("As a legal matter, a direct-competitor relationship is not necessary to sustain a false advertising claim under the Lanham Act.").

[7] Defendant Niagara suggests that "there is a basis for arguing that a heightened [pleading] standard should apply to Frompovicz's claim of disparagement." But, as Defendant Niagara recognizes, the Third Circuit "has not ruled whether district courts should apply a heightened pleading standard for Lanham Act claims." *U.S. ex rel. Knisely v. Cintas Corp.*, 298 F.R.D. 229, 238 (E.D. Pa. 2014). Absent a requirement from the Third Circuit to do so, we decline to apply a heightened standard here.

Plaintiff also advances a second theory of proximate cause alleging that he suffered commercial harm when the Bottler Defendants chose to source and sell Defendant Land's non-spring water in lieu of purchasing actual spring water from Plaintiff.[8] Specifically, Plaintiff alleges that if the Bottler Defendants:

> were to meet demand for spring water in the absence of Land's phony spring water, they would have no choice but to use Plaintiff's and other class members' true spring water. Thus, every bottle of falsely-labeled water that a wholesaler, retailer, or consumer purchased from Niagara, Ice River, and Crossroads was a bottle that did not contain Plaintiff's or other class members' true spring water, directly resulting in lost sales or profits for Plaintiff or other class members.

The Bottler Defendants contend that this allegation is mere speculation because Plaintiff has "pled no facts that demonstrate that" Bottler Defendants "would have *necessarily purchased* water *from him* in lieu of another spring." To the contrary, at least as to Defendants Niagara and Ice River, the Amended Complaint contains allegations to suggest that, if not for decision to violate the statute, the Bottler Defendants would have continued to purchase spring water from Plaintiff.

As to Defendant Niagara, the Amended Complaint alleges that:

> Niagara purchased spring water from Plaintiff for years, but in 2009 cancelled its contract with Plaintiff and started purchasing well water from Land. Niagara, in turn, mislabeled and sold Land's well water as spring water. *Absent this deception*, Niagara would have continued to purchase true spring water from Plaintiff (or other class members). Niagara's fraudulent conduct at this point cost Plaintiff at least approximately 560 loads of spring water per year.

The allegations set forth a plausible theory of proximate cause: Plaintiff's commercial harm "flow[s] directly from the deception wrought by the defendant's advertising" because Defendant

---

[8] Plaintiff's allegations against Defendant Land and the Bottler Defendants are in some tension with one another. Plaintiff alleges both Defendant Land and the Bottler Defendants are knowingly mislabeling and selling non-spring water as spring water in order to "dupe customers into paying a premium." But, the Bottler Defendants are Defendant Land's customers. If Defendant Land deceived the Bottler Defendants into purchasing his mislabeled water, then the Bottler Defendants could not have knowingly purchased, bottled, and sold the mislabeled water to consumers. Nevertheless, the inconsistency is not fatal to Plaintiff's claim because Rule 8(d) (2) "permits inconsistency in both legal and factual allegations." *Indep. Enterprises Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997).

Niagara cancelled its contract with Plaintiff for the purpose of purchasing, bottling, and mislabeling Defendant Land's well water as spring water. *Lexmark*, 572 U.S. at 133. The existence and subsequent cancellation of Defendant Niagara's contract with Plaintiff suggests Niagara "would have *necessarily purchased* water *from* [Plaintiff] in lieu of another spring," absent the scheme to deceive customers.

The Amended Complaint contains analogous allegations against Defendant Ice River. Plaintiff alleges Defendant Ice River "purchased, bottled, and sold Plaintiff's spring water," but:

> in March 2013, Ice River ceased purchasing, bottling, and selling Plaintiff's spring water in favor of Land's well water. Like Niagara, Ice River fraudulently labeled Land's well water as "spring water," which resulted in lost sales for Plaintiff . . . of approximately 2,297 to 3,000 loads of spring water per year.

While less precisely pled than the allegation against Defendant Niagara, Plaintiff's theory of proximate cause is the same: Plaintiff's lost sales are a direct result of Defendant's decision to cease buying water from Plaintiff so as to pursue a fraudulent plan to sell Defendant Land's water as spring water. Again, the pre-existing commercial relationship renders it plausible that Defendant Ice River would have continued to purchase spring water from Plaintiff if not for the plan to sell mislabeled water.

The story is different as to Defendant Crossroads. Unlike Defendants Niagara and Ice River, Plaintiff does not allege a pre-existing commercial relationship with Defendant Crossroads. Rather, Plaintiff alleges only that "Defendant Crossroads sought to purchase Plaintiff's spring water to bottle and sell in September in 2014," but "[o]nce Crossroads realized it could purchase, bottle, and sell Land's presumably cheaper yet mislabeled well water instead of Plaintiff's true spring water, Crossroads terminated negotiations with Plaintiff." Nevertheless, Plaintiff alleges that "Land sells 26 million gallons of well water to Crossroads," and "every drop of these 26 million gallons of phony spring water is a drop that would have been sales of

Plaintiff's (or other class member's) true spring water."[9] The claim stretches Plaintiff's proximate cause theory to its breaking point. Whereas the pre-existing commercial relationship between Plaintiff and the other Bottler Defendants renders it plausible that the bottlers would have continued to purchase Plaintiff's water if not for the scheme to deceive consumers, here, no such conclusion can be drawn. Given Plaintiff and Defendant Crossroads never progressed past mere negotiations, it requires too many "intricate, uncertain inquiries," *Lexmark*, 572 U.S. at 140, to conclude that Defendant Crossroads "would have *necessarily purchased* water *from* [Plaintiff] in lieu of another spring," if not for the scheme to deceive customers.

Plaintiff's allegations that Defendants Niagara and Ice River cancelled existing relationships with Plaintiff to pursue plans to deceive consumers by mislabeling Defendant Land's well water as spring water are the type of "relatively unique circumstances" whereby an indirect competitor may make out a plausible theory of proximate cause. At the same time, the lack of a pre-existing commercial relationship between Plaintiff and Defendant Crossroads leaves Plaintiff's claims against Crossroads "too remote" to satisfy the proximate cause prong.

The Court hastens to add, though, that although Plaintiff "has *alleged* an adequate basis to proceed under § 1125(a), it cannot obtain relief without *evidence* of injury proximately caused" by the Defendants' alleged misrepresentations. *Lexmark*, 572 U.S. at 140. "We hold only that [Plaintiff] is entitled to a chance to prove its case." *Id.*

\* \* \*

In sum, Plaintiff has adequately alleged a viable Lanham Act claim against Defendant Land on both a theory of commercial harm and commercial disparagement. The Motion to Dismiss will be denied as to Defendant Land. Plaintiff has also adequately alleged a viable

---

[9] Plaintiff's claim is not saved by the allegation that Defendant Cross Roads would have purchased spring water from some other member of the class. Plaintiff must allege "his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

13

Lanham Act claim on theories of both commercial harm and commercial disparagement against Defendant Niagara, so that the Motion to Dismiss will be denied as to Defendant Niagara. As to Defendant Ice River, Plaintiff has alleged a viable Lanham Act claim on a theory of commercial harm. The Motion to Dismiss will be denied. Finally, Plaintiff has failed to make out a viable Lanham Act claim against Defendant Crossroads. The Motion to Dismiss will be granted as to Defendant Crossroads.[10]

### B. Pennsylvania Unfair Competition Statute

Last, Defendants contend that Plaintiff's state law claims are preempted by the Food, Drug and Cosmetic Act (FDCA). Defendants argue this Court should adopt the reasoning set forth in *Patane v. Nestle Waters North America, Inc.*, a recent District Court of Connecticut decision that addressed a similar, though not identical, set of state law claims against a spring water bottler and distributor. 314 F.Supp.3d 375 (D. Conn. 2018). While the opinion is, of course, non-binding, this Court nevertheless finds Judge Meyer's reasoning instructive in resolving the preemption issue.

The doctrine of federal preemption is a product of the Supremacy Clause of the U.S. Constitution, which provides the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Federal preemption comes in three flavors: express preemption, field preemption, and implied conflict preemption. *Hillsborough County, Fla., v. Automated Med. Labs., Inc.,* 471 U.S. 707, 713 (1985). When determining the preemptive effect of federal law,

---

[10] Because the Pennsylvania common law cause of action for unfair competition "is virtually the same" as the Lanham Act, the Motion to Dismiss Plaintiff's state law claims will also be granted as to Defendant Crossroads. *Flynn v. Health Advocate, Inc.*, 169 F. App'x 99, 101 (3d Cir. 2006); *see also Harp v. Rahme*, 984 F. Supp.2d 398, 410 (E.D. Pa. 2013), *aff'd without opinion,* (3d Cir. No. 13-4808, Aug. 13, 2014) ("[t]he requirements of a Pennsylvania unfair competition claim mirror those of a Lanham Act claim, but without the additional federal requirement of interstate commerce.")

"the purpose of Congress is the ultimate touchstone in every preemption case." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996).

Two separate provisions of the FDCA and two separate theories of preemption are at issue here. The first relevant statutory provision is 21 U.S.C. § 343-1(a)(1), which provides:

> no state or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce any requirement for a food which is the subject of a standard of identity established under 341 of this title that is not identical to such standard of identity.

By its plain terms Section 343-1(a)(1) expressly preempts any state requirement that defines a food "subject of a standard of identity" differently from how it is defined under the FDCA. *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 243, n.2 (3rd Cir. 2008) ("The Act includes an express preemption provision, 21 U.S.C. §343-1"). The FDA has promulgated a standard of identity for bottled water, including a definition of "spring water." 21 C.F.R. § 165.110. As a result, "a State may not impose a 'spring water' requirement that varies in scope or substance from the federal definition under the FDCA." *Patane*, 314 F.Supp.3d at 385.

Plaintiff alleges that Defendants engaged in unfair competition, in part, by marketing Defendant Land's water as "spring water" when the Pennsylvania DEP permit identified the source as a "well water" site rather than a "spring water" site. This, however, is precisely the type of claim that Section 343-1(a)(1) preempts. To the degree that Plaintiff's unfair competition claim is premised on Pennsylvania's permitting requirements as to what constitutes "spring water" differing from the FDA's labeling requirements as to what constitutes "spring water," that claim is preempted by Section 343-1(a)(1). The FDCA preempts Plaintiff from premising an unfair competition claim on Pennsylvania "self-styled definitions or labeling requirements for

15

'spring water' that differ or depart from the federal standards." *Patane*, 314, F.Supp.3d at 386.[11]

The second relevant statutory provision of the FDCA provides that "[a]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a). That is, the FDCA "creates no private right of action." *In re Orthopedic Bone Screw Products Liability Litig.*, 193 F.3d 781, 788 (3rd Cir. 1999). Although not an express preemption provision, the Supreme Court has understood Section 337(a) to impliedly preempt a state law claim based on conduct that is wrongful only because it conflicts with the FDCA or FDA regulations. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001) ("we hold that the plaintiffs' state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by, federal law"). As the Sixth Circuit explained: "the [FDCA] statute's public enforcement mechanism is thwarted if savvy plaintiffs can label as arising under a state law for which there exists a private enforcement mechanism a claim that in substance seeks to enforce the FDCA." *Loreto v. Procter & Gamble Co.*, 515 Fed.App'x. 576, 579 (6th Cir. 2013). Thus, the FDCA impliedly preempts state law claims that are premised solely on a violation of the FDCA.[12]

Section 337(a) impliedly preempts the remainder of Plaintiff's unfair competition claim because the allegations are, in effect, an attempt to enforce alleged violations of the FDCA and FDA regulations. Plaintiff, for example, contends that Defendants engaged in unfair competition

---

[11] To be clear, this decision does not stand for the proposition that the FDCA preempts a statute like the Pennsylvania Safe Drinking Water Act—the source of the permitting requirements. *See* 35 Pa. Cons. Stat. § 721.2. Rather, the Court merely concludes that Section 343-1(a)(1) prevents a party, like Plaintiff, from bring an unfair competition claim that relies on a definition of "spring water" that differs from the FDCA.

[12] *Holk v. Snapple Beverage Corp.* is not to the contrary. 575 F.3d 329 (3d Cir. 2009). There, the Third Circuit held that an informal FDA policy statement concerning the use of the word "natural" in drink labeling did not "have the force of law required to preempt conflicting state law." *Id.* at 342. Nevertheless, the Third Circuit recognized that "[b]oth federal statutes and regulations have the force of law and can preempt contrary state law." *Id.* at 339. Here, the FDA has promulgated a regulation setting forth a standard of identity for "spring water" that has "the force of law and can preempt contrary state law." *See* 21 C.F.R. § 165.110.

by extracting, bottling, and selling Land's water because the "raw water extracted at Pine Valley Springs does not satisfy the FDA definition of 'spring water.'" This type of allegation is foreclosed because it is "predicated on a violation of the FDCA rather than on some independent provision or requirement of state law." *Patane*, 313 U.S. at 386. The allegations that the Defendants' violated state law because the raw water was "extracted, handled, or treated with equipment or techniques that are inconsistent with 'spring water' classification criteria," and "tested as containing more particulates or trace elements than are otherwise permissible or recommended under industry standards" are similarly predicated on the violation of FDCA requirements. The upshot is that Plaintiff's "generic state law claim" for unfair competition "would not be actionable absent a violation of the FDCA standard." *Patane*, 314 F. Supp.3d at 386-87. Because Plaintiff's claim "would not exist but for a FDCA regulation, § 337(a) impliedly preempts the claim." *Id.* at 387.

In sum, the combined effect of 21 U.S.C. § 343-1(a) (1) and Section 337(a) preempt Plaintiff's unfair competition claim, and Defendants' Motion to Dismiss as to that claim will be granted.[13]

A separate order follows.

                                                        **BY THE COURT:**

                                                        /s/Wendy Beetlestone, J.

                                                        **WENDY BEETLESTONE, J.**

**September 18, 2018**

---

[13] Defendants seek to dismiss Plaintiff's claim for injunctive relief on the ground that the Amended Complaint does not allege facts to establish "continuing, present adverse effects" of Defendants' alleged statutory violation. This Court dismissed Plaintiff's claim for injunctive relief in its prior decision because the original Complaint did not contain facts to establish that Plaintiff remained in the spring water business. *Frompovicz*, 313 F.Supp.3d at 610. Plaintiff's Amended Complaint now contains such facts: "[Plaintiff] currently operates two fully permitted spring water sites in Auburn and Brandonville, Pennsylvania . . . Plaintiff's Brandonville site currently supplies spring water that is bottled and sold by, inter alia, non-party bottler Signature Springs, LLC." As a current extractor and supplier of spring water, the Amended Complaint alleges sufficient facts to support a claim for injunctive relief.