# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANLEY F. FROMPOVICZ d/b/a FAR AWAY SPRINGS-AUBURN, and d/b/a FAR AWAY SPRINGS-BRANDONVILLE, on behalf of himself and all others similarly situated | : | CLASS ACTION COMPLAINT |
| | : | CIVIL ACTION |
| Plaintiffs, | : | No. 2:18-cv-00054-WB |
| | : | |
| v. | : | JURY DEMAND |
| | : | |
| NIAGARA BOTTLING, LLC, et al. | : | |
| Defendants. | : | |

**DEFENDANTS JAMES J. LAND, JR. AND ICE RIVER SPRINGS USA, INC.'S BRIEF
IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# REDACTED

# HIGHLY CONFIDENTIAL

## **TABLE OF CONTENTS**

Table of Authorities ............................................................................................ ii

I.   INTRODUCTION ........................................................................................ 1

II.  FACTS ....................................................................................................... 3

III. ARGUMENT ............................................................................................ 11

    A.    Plaintiff's Proposed Class Definitions are Overbroad and Must Be Rejected........ 11

    B.    The Class is Not Sufficiently Ascertainable ......................................... 15

    C.    Plaintiff Has Failed to Meet the Rule 23 Requirements for Class Certification.....18

        i. Plaintiff cannot satisfy Rule 23(a)'s typicality and adequacy requirements .......19

        ii. The Proposed Class is insufficiently numerous.................................................24

        iii. Plaintiff has failed to meet the requirements under Rule 23(b)(2)...................26

        iv. Plaintiff has failed to meet the requirements under Rule 23(b)(3) ..................27

Conclusion ........................................................................................................30

Certification of Filing and Service.....................................................................31

## TABLE OF AUTHORITIES

### CASES

*Apani Southwest Inc. v. Coca-Cola Enterprises Inc.*, 300 F.3d 620 (5th Cir. 2002) ...................... 12

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ............................................... 12

*Buckeye Tree Lodge & Sequoia Village Inn, Inc.*, No. 16-cv-4721, 2019 WL 1170489 (N.D. Cal. Mar. 3, 2019) .......................................................................................... 18

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) ............................................. 16, 18

*Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (1998) .................... 12

*Center City Periodontists, P.C. v. Dentsply International, Inc.*, 321 F.R.D. 193 (E.D. Pa. 2017) ........................................................................................... 16, 29

*Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141 (3d Cir. 2008) ................................ 28

*EEOC v. The Great Atlantic & Pacific Tea Co.*, 735 F.2d 69 (3d Cir.1984) ............................. 22

*Ethypharm S.A. Fr. V. Abbott Labs.*, 707 F.3d 223 (3d. Cir. 2013) .................................... 12

*Ferry Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205 (3d Cir. 2014) ..... 27

*Georgine v. Amchem Products, Inc.*, 83 F.3d 610 (3d Cir.1996) ...................................... 20, 29

*Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013) ....................................... 25

*Hernandez v. Ashley Furniture Industries, Inc.*, 2013 WL 2245894 (E.D.Pa. 2013) ............ 28

*Hornsby Oil Co. v. Champion Spark Plug. Co.*, 714 1384 (5th Cir. 1983) ...................... 12, 13, 15

*Hot Wax, Inc v. Turtle Wax, Inc.*, 191 F.3d 813 (7th Cir.1999) .................................... 22

*In Re Blood Reagants Antitrust Litigation*, 783 F.3d 183 (3d. Cir. 2015) .................................. 15

*In Re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305 (3d Cir. 2008) ..................... 19, 27-8

*In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585 (3d Cir. 2009) ........................... 19

*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir.2004) .................................. 20

*In re: Syngenta AG MIR 162 Corn Litigation*, 14-MD-2591-JWL, 2016 WL 5371856 (D. Kan. Sept. 26, 2016) ........................................................................................ 18

*Jackson v. SEPTA*, 260 F.R.D. 168 (E.D. Pa. 2009)........................................................... 11

*Kamerman v. Ockap Corp.*, 112 F.R.D. 195 (S.D.N.Y. 1986) ......................................... 23

*Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3d Cir. 1974) .............................................. 29

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.,* 2017 WL 3705715 (E.D. Pa. Aug 28, 2017) ...................................................................................................................... 29

*Lexmark International Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) .......... 12, 15

*Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d Cir. 2012) ........................... 18, 25, 28

*Mielo v. Steak 'n Shake Operations, Inc.* 897 F.3d 467 (3d Cir. 2018)......................... 19

*Neale v. Volvo Cars of North America, LLC,* 794 F.3d 353 (3d Cir. 2015) ............................ 28

*Sanneman v. Chrysler Corp.*, 191 F.R.D. 441 (E.D. Pa 2000) ......................................... 11

*Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.* 401 F.3d 123 (3d Cir.2005)....... 22

*Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208 (1974).................................... 20

*T. Harris Young & Associates, Inc. v. Marquette Electronics, Inc.* 931 F.2d 816 (11th Cir. 1991) ...................................................................................................................... 13, 15

*Vanderbilt v. Geo-Energy Ltd.*, 725 F.2d 204 (3d Cir. 1983)........................................... 23

*Western States Wholesale, Inc. v. Synthetic Industries, Inc.*, 206 F.R.D. 271 (C.D. Cal. 2002)28-9

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) ........................................................ 19, 25

## STATUTES AND RULES

Federal:

Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq* ........................................ 3

Federal Rules of Civil Procedure:
  Rule 23 ............................................................................................................ passim

Lanham Act, 15 U.S.C. §§ 1051 et seq.:
  Section 1125(a) ................................................................................................ passim

Title 21, Code of Federal Regulations:
    Section 129.35................................................................................................... 3, 4
    Section 129.35(a)(3) ........................................................................................ 4
    Section 165.110(a)(2)(vi)................................................................................ 3, 4

Title 60, Federal Register:
    Section 57076.................................................................................................. 4
    Section 57096.................................................................................................. 4

## **OTHER AUTHORITIES**

5 James Wm. Moore, et al., Moore's Federal Practice § 23.22..................................... 24

5 William B. Rubenstein, Newberg on Class Actions § 3:12....................................... 24

**DEFENDANTS JAMES J. LAND, JR. AND ICE RIVER SPRINGS USA, INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Defendants James J. Land, Jr. ("Land")[1] and Ice River Springs USA, Inc.[2] ("Ice River"), by and through their undersigned counsel, file this response in opposition to Plaintiff Stanley F. Frompovicz's ("Plaintiff") Motion for Class Certification ("Motion").

## I.   INTRODUCTION

███████████████████████████████ Exh. A (Niagara 110225).  This single quote from Plaintiff explains succinctly the purpose of this lawsuit: to bring down Land and any spring water extraction business in which he has an interest by any means necessary, regardless of whether the claims are true. Plaintiff's target in this case is Pine Valley[3], a spring water source controlled by MCRD[4]. Ignoring the overwhelming evidence that Pine Valley water is spring water, Plaintiff alleges that, in violation of § 1125(a) of the Lanham Act, Land, Ice River, and

---

[1] The Defendant named in the Amended Complaint is "James J. Land, Jr. d/b/a MC Resource Development a/k/a Pine Valley Farms Springs".  Land however does not do business as MC Resource Development Company ("MCRD") as MCRD is a Pennsylvania partnership that maintains all corporate formalities.  Plaintiff's counsel has been advised of this fact on numerous occasions yet refuses to amend or correct this deficiency.

[2] The Defendant named in the Amended Complaint is incorrectly identified as "Ice River Springs Water Co".  Plaintiff's counsel has also been advised of that fact yet continues to do nothing to correct the issue.

[3] Spring water from Pine Valley is extracted from an aquifer that supplies water to Pine Valley Spring No. 1 ("Pine Valley Spring") at property located in New Ringgold, Schuylkill County, Pennsylvania (the "Pine Valley Property"). Exh. B, Expert Report of James Richenderfer, Ph.D., P.G. ("Richenderfer Report"); Exh. C, Turner Collie & Braden Hydrogeologic Evaluation ("Kribbs Report") at p. 1 (FAS024802-FAS024894).

4

███████████████████████████████████████████████████

Niagara Bottling, LLC ("Niagara")[5] falsely label water sold from Pine Valley as spring water. Despite the personal nature of the dispute, Plaintiff has brought the lawsuit as a class action, and seeks certification of the following class:

> All persons or entities who, between January 8, 2012 and the present who (i) extracted spring water for sale within 400 miles of either Pine Valley in New Ringgold, PA, Niagara's bottling plants in Allentown or Hamburg, PA, or Ice River's bottling plant in Allentown, PA; and/or (ii) bottled spring water for sale in the United States.

As a threshold matter, Plaintiff's class definition must be rejected because Plaintiff has provided no reliable evidence of the geographic markets for either the proposed extractor class (400 miles) or the proposed bottler class (nationwide), and Plaintiff's expert has failed to perform any analysis to determine the appropriate geographic markets or class members. The class is also not ascertainable as mini-trials and individualized inquiries regarding each of the putative class members would be required to determine whether they are sellers of spring water and therefore appropriate members of the class.

Even if the class were properly defined and ascertainable, class certification must be denied because Plaintiff is not an appropriate class representative for a multitude of reasons:

a) Plaintiff is not a bottler and therefore cannot represent the bottler class;

b) Plaintiff's personal animus towards Land both renders him an inadequate class representative and renders his claim atypical of the class.

c) Plaintiff has no incentive to pursue claims on behalf of either the extractor class or the bottler class as he does not stand to benefit if the other class members successfully prove their claims.

d) Plaintiff's claim faces unique defenses resulting from his failed business operations, and his failure to commence timely this action.

---

[5] Crossroads Beverage Group, LLC ("Crossroads") was also named as a bottler defendant but upon Defendants' Motion to Dismiss, this Court dismissed Crossroads from this action with prejudice (Doc. No. 42).

Moreover, the class is insufficiently numerous given Plaintiff's failure to adequately define the class, and Plaintiff fails to establish that the issues in this case can be decided with common proofs. For all of these reasons, Plaintiff fails to meet his burdens of properly defining a class and establishing the elements required for class certification under Rule 23(a), and class certification must be denied.

## II.   FACTS

Since July 2001, MCRD has extracted water from Pine Valley for sale to bottlers. The sale of Pine Valley water and other spring water is regulated by the United States Food and Drug Administration ("FDA"), which regulates bottled water as a food product under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq*[6]. There exist two distinct prongs in the analysis of whether water drawn from a source can lawfully be labelled as spring water. First, a source must be an "Approved Source", 21 CFR 129 *et seq*. and second, the spring water must meet the Standard of Identity for spring water, 21 CFR 165.110(a)(2(vi). Only if a source meets each prong can a source be deemed spring water for labelling purposes.

Prong One:  Approved Source 21 CFR 129.35

21 CFR 129.35 is contained in a section of the regulations generally referred to as the Good Manufacturing Practices ("GMP's") for Bottled Water. These standards are specific to the bottled water industry and set minimum standards for the operation of bottling plants. For

---

[6] On September 9, 2015, the FDA conducted an unannounced comprehensive inspection of Pine Valley. The FDA toured the facility and reviewed over 400 pages of records, including chemical and bacteriological records, state and local regulatory approvals, geologic and engineering reports, HAACP Programs and Spring designation opinions; all of which were produced either electronically or in hard copy during the process. The FDA found no deficiencies in its review. As part of the inspection, the FDA addressed a complaint that had been filed by Plaintiff with the FDA in which Plaintiff made similar complaints as he has in this matter; namely, that Land is not sourcing spring water. After reviewing the documentation, the FDA determined that it would take no action against Land. As a result, the FDA's inspection was formally closed on January 20, 2016. Exh. D, FDA Establishment Inspection Report (LAND06399-6403).

product (source) water, an approved source is one that has been inspected by the state or local agencies having jurisdiction and is properly constructed, located, well-maintained, is of sufficient capacity and is of a safe and sanitary quality.  21 CFR 129.35 *et seq*; 60 FR 57076; 57096.  The regulations further require source water testing at regular intervals for chemical contaminants, and weekly for *e.coli*. 21CFR 129.35(a)(3). These standards are expanded by a myriad of multistate, state, regional and local laws and regulations designed to further protect the interest of the public.  The FDA requires that bottlers comply with this myriad of rules before a source can be or remain an approved source. 21CFR 129.35.

<u>Prong Two: Standard of Identity for Spring Water</u>

The FDA has promulgated a standard of identity for spring water, which is defined as follows:

> [t]he name of water derived from an underground formation from which water flows naturally to the surface of the earth may be 'spring water.' Spring water shall be collected only at the spring or through a bore hole tapping the underground formation feeding the spring. There shall be a natural force causing the water to flow to the surface through a natural orifice. The location of the spring shall be identified. Spring water collected with the use of an external force shall be from the same underground stratum as the spring, as shown by a measurable hydraulic connection using a hydrogeologically valid method between the bore hole and the natural spring, and shall have all the physical properties, before treatment, and be of the same composition and quality, as the water that flows naturally to the surface of the earth. If spring water is collected with the use of an external force, water must continue to flow naturally to the surface of the earth through the spring's natural orifice. Plants shall demonstrate, on request, to appropriate regulatory officials, using a hydrogeologically valid method, that an appropriate hydraulic connection exists between the natural orifice of the spring and the bore hole."

21 CFR 165.110(a)(2)(vi).

To determine whether a source is a viable spring water source, that particular source must be assessed for compliance with the FDA definition.  Exh. E, Plaintiff's Deposition Transcript at pp. 17:8-18:5, 22:10-20.  Plaintiff has not produced any evidence that he has ever independently

assessed or tested any of the proposed extractor class members' sources to determine whether water collected from the sources meets the FDA definition of spring water. *See e.g.* Exh. F, Dr. Jeffrey Stec Deposition Transcript at pp. 56:4-58:6. Absent individualized testing of each source, there is no data or other records by which one can determine that a particular source meets the FDA definition of spring water. Exh. E, at pp. 257:11-259:14.

State Regulation of Water

The Pennsylvania Department of Environmental Protection (the "PADEP"), which regulates bulk water hauling systems and certain bottled water systems makes no determination as to whether a specific source meets the FDA definition of spring water. Exh. G, Declaration of Brian T. Yagiello, Environmental Program Manager, PADEP Northeast Regional Office at ¶¶ 2-9. The PADEP does not permit or otherwise approve any bottled or bulk water hauling system specifically as a "spring" under the FDA definition. *Id.* at ¶ 9. No Pennsylvania regulatory agency does so. Thus, for example, although the PADEP Public Water Supply Permit has check boxes under the heading "Source" that includes boxes for, among other things, "Well(s)" and "Spring(s)"; those boxes identify the manner in which the water from the source is collected. "Spring(s)" indicates that the water is collected through a catchment, while "Well(s)" indicates that water is collected through boreholes. *Id.* at ¶ 13. A water source can meet the FDA definition of spring water but still be designated as "Well(s)" on a PADEP permit.

The PADEP also does not maintain any records or lists of spring water sources in the Commonwealth of Pennsylvania, and there is no resource otherwise available through PADEP or any other state regulatory agency where one could look to identify spring water sources or water sources meeting the definition for spring water. *Id.* at ¶¶ 9-11. The PADEP has never made a

determination as to whether Pine Valley, or any other source, meets the FDA definition for spring water. *Id.* at ¶ 9.

<u>Pine Valley</u>

From its inception through today, Pine Valley has been independently tested and analyzed to ensure that it meets the FDA definition of spring water.  Specifically, in 1999, MCRD hired Gary Kribbs ("Kribbs"), a licensed professional geologist then at Turner Collie & Braden, Inc. to prepare a report analyzing whether water extracted from the Pine Valley Property met the FDA definition of spring water. Exh. C. Kribbs concluded that the water met the FDA definition of spring water, and his conclusions have been confirmed several times by additional third-party testing[7].

Despite the foregoing, Plaintiff, without completing any testing of his own, has reached the conclusion that Pine Valley water is not spring water. ███████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

██████████████████████ Plaintiff has expressed his beliefs about Pine Valley on numerous occasions, telling anyone who he thought might listen that Pine Valley is not a spring water source and that it must be shut down. ██████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

---

[7]Similarly, third party reviews of Kribbs' analysis and test results (including by regulatory authorities in other states) have likewise confirmed Kribbs' analysis.  Exh. B, Richenderfer Report.



The failure of anyone to believe Plaintiff's false statements regarding Pine Valley have driven him to harbor intense animosity not only towards Land, Niagara, and Ice River, but also towards Pennsylvania regulatory authorities.



Plaintiff's animosity towards Land and the PADEP is also reflected by his commencement of a lawsuit against the PADEP and many of its employees for alleged

Constitutional violations arising from its alleged disparate treatment of MCRD and Land as compared to Plaintiff. *Stanley F. Frompovicz, Jr. v. Penn. Dept. of Environ. Protection, et al.*, 5:17-cv-2790(JFL) (filed June 19, 2017).

Plaintiff's Business Operations

Plaintiff harbors this resentment despite the fact that the loss of business that he alleges that he suffered is not due to Pine Valley's false advertisement of spring water but due to his own poor business operations.  Plaintiff's operations consist of two bulk water hauling systems under the Far Away Springs name: Far Away Springs Auburn and Far Away Springs Brandonville[8].



The history of his business at Far Away Springs Auburn is more complicated.

---

[8]





Economic Realities of Spring Water Extracting and Bottling





## III.   ARGUMENT

### A.   PLAINTIFF'S PROPOSED CLASS DEFINITIONS ARE OVERBROAD AND MUST BE REJECTED.

A prerequisite to a Rule 23 action is the actual existence of "class." *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 445 (E.D. Pa 2000). The class must be sufficiently identifiable and not be overly broad. *Sanneman*, 784 F.3d at 445. A defendant may first challenge the class definition itself before the factors for class certification are considered by the court. *Jackson v. SEPTA*, 260 F.R.D. 168, 182 (E.D. Pa. 2009) (citing cases and determining that it is appropriate to consider class definition preliminarily). Plaintiff seeks to certify the class on the theory that

11

Defendants have mislabeled and sold Pine Valley water as "true spring water" in violation of the Lanham Act. Plaintiff's Brief at p. 12.  To invoke the Lanham Act's cause of action for false advertising, a plaintiff must prove an injury to a commercial interest in sales or business reputation. *Lexmark Intern. Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014) (citing Lanham Act, § 43(a)(1)(B), 15 U.S.C.A. § 1125(a)(1)(B)).  "A plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 134.

The Third Circuit has analogized the requirement of competitive injury under § 1125(a) to antitrust injury. *Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (1998).  Among other things, an antitrust plaintiff must establish the geographic market in which competition was adversely impacted.  *See Ethypharm S.A. Fr. V. Abbott Labs.*, 707 F.3d 223, 232 (3d. Cir. 2013).  The geographic market is defined by the area the seller operates and to which buyers can practically turn for supplies." *Apani Sw. Inc. v. Coca-Cola Enters. Inc.*, 300 F.3d 620, 626 (5th Cir. 2002).  The geographic market must "correspond to the commercial realities of the industry. . .." *Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962).



*Hornsby Oil Co. v. Champion Spark Plug. Co.*, 714 1384, 1394 (5th Cir. 1983) (considering transportation costs, delivery limitations, customer convenience and customer preference in a geographic market analysis); *see also T. Harris Young & Assocs. v.*

*Marquette Elecs., Inc.* 931 F.2d 816 (11th Cir. 1991) (the location and facilities of other distributors and producers are relevant considerations in determining the geographic market). *Hornsby Oil Co. v. Champion Spark Plug. Co.*, 714 1384, 1394 (5th Cir. 1983) (considering transportation costs, delivery limitations, customer convenience and customer preference in a geographic market analysis).





10



See also *T. Harris Young & Assocs. v. Marquette Elecs., Inc.* 931 F.2d 816 (11th

Cir. 1991); *Hornsby Oil Co. v. Champion Spark Plug. Co.*, 714 1384, 1394 (5th Cir. 1983)



[11] *See In Re Blood Reagants Antitrust Litigation,* 783 F.3d 183

(3d. Cir. 2015) (holding that a plaintiff cannot reply upon challenged expert testimony to

demonstrate conformity with the requirements of class certification unless the expert testimony

meets the standard set forth in *Daubert*).

B.      THE CLASS IS NOT SUFFICIENTLY ASCERTAINABLE.

---

[11] In its Opinion granting in part and denying in part Defendants' Motions to Dismiss Plaintiff's Amended Complaint, this Court relied upon *Lexmark Inter., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) to find that the commercial harm alleged in Plaintiff's Complaint satisfied the Lanham Act's zone of interest test and that Plaintiff had adequately stated a plausible theory of proximate cause with regard to his claims against Defendants Land, Ice River, and Niagara. The Court however did not make a determination as to whether any of the other particular proposed class member's claims would in fact satisfy the zone of interest test or that Plaintiff would be able to prove proximate cause. Furthermore, the Court noted that "although Plaintiff 'has *alleged* an adequate basis to proceed under § 1125(a), it cannot obtain relief without *evidence* of injury proximately caused' by the Defendants' alleged misrepresentations." *See* Opinion at p. 13.

As another threshold issue, Plaintiff must show that there is a reliable and administratively feasible method for ascertaining the members of a class. "Ascertainability provides due process by requiring that a defendant be able to test the reliability of the evidence submitted to prove class membership." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013). The Third Circuit imposes a strict standard of ascertainability, by which the plaintiff must show not only that the class is defined by reference to objective criteria, but also that class members may be determined in an economical and "administratively feasible manner." *Carrera*, 727 F.3d at 307. "Accordingly, a trial court should ensure that class members can be identified without extensive and individualized fact-finding or mini-trials." *Id.* (internal quotation marks and citations omitted); *see also Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 214 (E.D. Pa. 2017).

Plaintiff asserts that the class can be ascertained by looking at sales records which reflect sales of spring water, together with proof of permits. Plaintiff's Brief at pp. 18-19. This proposal is both hypocritical and contrary to the very theory of Plaintiff's case, since Plaintiff claims that these same records are deficient proof that Pine Valley is a true spring water extractor. In other words, Plaintiff contends that Land cannot rely on a permit to prove that Pine Valley meets the FDA definition of spring water, but then proposes that the only thing that needs to be done to ascertain whether an extractor or bottler is a class member is to look at its sales records and permits to confirm that the entity is selling spring water. Plaintiff cannot have it both ways.

In reality, neither the PADEP nor any governmental agency maintains a list of all "true" spring water extractors or bottlers in the United States. Exh. G at ¶¶ 9-11. Accordingly, prior to entering into a supply agreement with an extractor, bottlers perform an extensive investigation of each potential source to determine whether it meets the FDA definition of spring water. The

16

merits question as to whether Pine Valley is a true spring water source has and will require extensive expert opinion, testing and analysis, and perhaps a jury just to answer that question. Similar "mini-trials" would be required for each putative class member to qualify as the extractor or bottler of true spring water.

████████████████████████████████████████████████████

████████████████████ The putative class member would need to establish that it complied with all federal and state standards of quality, federal standards of identity (in particular the FDA definition), that it has approvals and any required permits, and even that it has met its own subjective standards. This type of mini-trial, which is required to assure due process to the defendant, is neither economical nor administratively feasible. It would require the Court, a special master, or some other administrator to analyze each class members' scientific proofs as to whether it is selling true spring water, and then make a scientific conclusion.

This would just be the first step of ascertaining the relevant class members. As discussed *supra*, every extractor or bottler would also have to also establish that it has suffered a competitive injury, i.e., that it sold spring water in the relevant geographic market and the extent and amount of its damages. This will also require an additional complicated analysis that involves multiple considerations of the economic realities of each member of the putative class. Under the relevant case law, when such individualized analysis of each proposed class member's

claim is required in order to determine whether a putative class member should be part of the class, class certification must be denied. [12]

C.     PLAINTIFF HAS FAILED TO MEET THE RULE 23 REQUIREMENTS FOR CLASS CERTIFICATION.

Even if the Court believes that Plaintiff has met the threshold requirements of a sufficiently defined and ascertainable class, Plaintiff has not met any of the Rule 23(a) requirements for class certification. In order for a class to be certified under Rule 23(a), each of the following requirements must be met: (1) the class is so numerous that joinder of class members is impracticable;   (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of those of the class; and (4) the class representatives will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

A party seeking class certification bears the burden of establishing that these threshold requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) have been met. *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 591 (3d Cir. 2012). If a plaintiff seeking certification has met its threshold burden, Courts will then consider whether the class meets the requirements of one of the following three categories of class actions in Rule 23(b):   (1) that prosecution of separate actions risks either inconsistent adjudications

---

[12] In his Motion, Plaintiff asserts that Courts routinely certify Lanham Act mislabeling cases because they readily meet the applicable Rule 23 criteria citing to *In re: Syngenta AG MIR 162 Corn Litig.*, 14-MD-2591-JWL, 2016 WL 5371856, at *1 (D. Kan. Sept. 26, 2016), and *Buckeye Tree Lodge & Sequoia Village Inn, Inc.*, No. 16-cv-4721, 2019 WL 1170489 (N.D. Cal. Mar. 3, 2019). Neither of these cases stand for the proposition that Courts routinely certify Lanham Act mislabeling cases or that they readily meet the applicable Rule 23 criteria. Furthermore, the Court in *Buckeye Tree Lodge* did not even certify the class under Federal Rule of Civil Procedure 23(b)(3) on the issue of disgorgement of profits and only certified the class with regard to the issue of injunctive relief as the plaintiff in that case failed to adequately present a classwide disgorgement model. Second, despite the Court certifying a class, *Syngenta* applied a different standard for ascertainability than that used in the Third Circuit as the Court recognized. *In re: Syngenta AG MIR 162 Corn Litig.*, 14-MD-2591-JWL, 2016 WL 5371856, at *1 (D. Kan. Sept. 26, 2016) (citing *Carrera v. Bayer Corp.* 727 F.3d 300, 307 (3d Cir. 2013).

which would establish incompatible standards of conduct for the defendant or would as a practical matter be dispositive of the interests of others; (2) that defendants have acted or refused to act on grounds generally applicable to the class; or (3) that there are common questions of law or fact that predominate over any individual class member's questions and that a class action is superior to other methods of adjudication. Fed.R.Civ.P. 23(b); *see also Mielo v. Steak 'n Shake Operations, Inc.* 897 F.3d 467 (3d Cir. 2018).

A federal court may only certify a class for litigation if it determines after a "rigorous analysis" that the party seeking class certification has met all of the prerequisites of Rule 23. *Wal-Mart Stores, Inc. v. Dukes*; *In Re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d at 309. As set forth herein, Plaintiff's claims lack both legal and factual merit, and the proposed class that Plaintiff seeks to certify (under any definition) fails to meet a single threshold requirement of Rules 23(a), 23(b)(2) and 23(b)(3).

    i.    <u>Plaintiff cannot satisfy Rule 23(a)'s typicality and adequacy requirements</u>

To determine whether a plaintiff's position is typical under Rule 23(a)(3), courts address three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both the legal theory advanced and the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class. Fed. R. Civ. P. 23(a). *Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193 (E.D. Pa. 2017).

Adequacy under Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d

585, 601–02 (3d Cir. 2009) (citing Fed.R.Civ.P. 23(a)(4). The adequacy inquiry "has two components designed to ensure that absentees' interests are fully pursued." *Id.* (citing *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 630 (3d Cir.1996)), *aff'd, Amchem,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689. First, the adequacy inquiry "tests the qualifications of the counsel to represent the class." *Id.* (citing *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 532 (3d Cir.2004) (internal citations omitted). The second component of the adequacy inquiry seeks "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* "Because of the similarity of [the typicality and adequacy] inquiries, certain questions—like whether a unique defense should defeat class certification—are relevant under both." *Id.* (citations omitted).

      As a threshold matter, ███████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████ Exh. K at Nos. 3-10. *See Schlesinger v. Reservits Comm. to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)(plaintiff must be member of class he seeks to represent).   Not being a bottler, Plaintiff has no incentive to adequately represent that proposed class ███████████████████████████████████████████████████ ██████████████████████████████ Exh. F at pp. 233:22-234:2. Furthermore, Plaintiff's damage theory on behalf of himself and the extractors directly conflicts with the bottlers' theory of damages.   As an extractor, Plaintiff's claim requires showing that the bottler defendants would have purchased spring water from him and the other members of the extractor class instead of purchasing water from Pine Valley.  The bottlers however would want to establish that the bottler defendants would not have replaced the water that they purchased from Pine Valley

with water from another extractor class member's source as the bottlers would want to prove that if the bottler defendants' sales of Pine Valley water were eliminated from the relevant spring water market, they would be replaced by their own sales of bottled water.

Similarly, Plaintiff is not an adequate representative of or typical of the other extractors he proposes to represent, as he also has no incentive to pursue claims on their behalf. ███

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

█████████████████████████████████ Therefore, Plaintiff cannot meet the adequacy or typicality requirement because he will not want to prove the claims of the potential class members. *See W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 276 (C.D. Cal. 2002) (finding that the plaintiff had not satisfied the adequacy requirement where any claim that the plaintiff made to the defendant's profits or lost sales would necessarily diminish the amount another class member would receive). █████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Plaintiff's claims are also atypical of the extractor class because his sources are not in competition with Pine Valley. █████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████ Exh. L; Exh. T.

Plaintiff further fails to meet the adequacy and typicality requirement because there are defenses

such as laches that apply to Plaintiff's claim that do not apply to claims.  Unlike the statute of limitations, laches is an equitable doctrine derived from the maxim that those who sleep on their rights, lose them. *Hot Wax, Inc v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir.1999). In order to prevail on a defense of laches, the defendant must normally demonstrate that there was "(1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom." *Id.*

The Lanham Act does not set forth a statute of limitations for claims arising thereunder. As a result, with respect to a false advertising claim under the Lanham Act in a Pennsylvania federal action, Courts have used Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) six-year catch all statute of limitations as the starting point for a laches analysis. *Id.* at 137-8.  Under the analysis, "[o]nce the statute of limitations has expired the defendant 'enjoys the benefit of a presumption of inexcusable delay and prejudice.'" *Id.* (quoting *EEOC v. The Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir.1984)).  In order to overcome this presumption, the plaintiff would have to demonstrate not only that the delay in bringing suit was excusable, but also that the delay did not prejudice the defendant.  *Santana*, 401 F.3d at 139.



22

███████████████████████████████████████████ This lawsuit

was thus commenced well over six years after Plaintiff knew of his alleged injury.

Laches is not the only defense that is unique to Plaintiff's claim. Specifically, ████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████ These defenses may be both inapplicable to many members of the class and likely to

become a major focus of the litigation.

Lastly, Plaintiff's interests and incentives are not sufficiently aligned with the putative

class given his individual claim against Land (and Niagara) for disparagement, and his personal

animus towards Land, which has resulted in his repeated attempts over the years to shut down

the operations of any water sources owned or controlled by entities in which Land has an

interest.  This undue animosity towards Land also renders him an inadequate class representative

as an unduly antagonistic litigant, or a litigant who bears a grudge against the defendant is not an

appropriate class representative. *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197 (S.D.N.Y.

1986); *Vanderbilt v. Geo-Energy Ltd.*, 725 F.2d 204, 207 (3d Cir. 1983)("plaintiff's

vindictiveness toward the defendants" a factor in adequacy).  Plaintiff's personal animus towards

Land cannot be defined as "small" ████████████████████████████████

██████████████████████████████ filed a lawsuit against the PADEP

due to the PADEP's treatment of Land, and repeatedly expressed to others that his personal goal

is to take down Land.  Exh. E at pp. 185:24-186:8, 241:16-242:15; Exh. A; Exh. I; Exh. J.

Plaintiff's false statements regarding Land and his inconsistent allegations in this

litigation and others will also prevent him from being a credible witness at trial. As an example,

Plaintiff claims here that his water is true spring water, but Pine Valley is not.  However, in litigation that he commenced against the PADEP, he claimed that Far Away Springs Auburn and Pine Valley are identical and have the same conditions, but that the PADEP is treating them differently. DEP Compl. ¶ 203; *id.* ¶ 161, 235 filed in *Stanley F. Frompovicz, Jr. v. Penn. Dept. of Environ. Protection, et al.*, 5:17-cv-2790(JFL).  Such inconsistencies would render Plaintiff's motive and credibility to be in such question that it would distract from the other class members' claims, and render Plaintiff an inadequate class representative.

     ii.     <u>The Proposed Class is Insufficiently Numerous</u>

The number of class members is the starting point for the numerosity analysis for class certification.  Leading treatises have collected cases and recognized the general rule that "[a] class of 20 or fewer is usually insufficiently numerous ... [a] class of 41 or more is usually sufficiently numerous.... [while] [c]lasses with between 21 and 40 members are given varying treatment. These midsized classes may or may not meet the numerosity requirement depending on the circumstances of each particular case." 5 James Wm. Moore, et al., Moore's Federal Practice § 23.22; see also 5 William B. Rubenstein, Newberg on Class Actions § 3:12; *see also King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2017 WL 3705715, at *7 (E.D. Pa. Aug. 28, 2017).

     a.     <u>The Extractor Class</u>

Factors that are appropriate for district court judges to consider when determining whether joinder would be impracticable include: judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages. See 5 Moore's Federal Practice § 23.22;

5 Newberg on Class Actions § 3.12; *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2017 WL 3705715, at *7 (E.D. Pa. Aug. 28, 2017). The court is under an obligation to ensure that joinder is impracticable for the numerosity requirement of class certification, the inquiry into impracticability should be particularly rigorous when the putative class consists of fewer than forty members. *Id.* A party seeking class certification "must be prepared to prove that there are in fact sufficiently numerous parties...." *Dukes*, 131 S.Ct. at 2551. Indeed, mere speculation as to the number of class members - even if such speculation is "a bet worth making"-cannot support a finding of numerosity. *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013)(citing *Marcus*, 687 F.3d at 596).

Plaintiff alleges that as an extractor he is harmed because bottlers buy falsely labeled spring water from Pine Valley rather than from him. Accordingly, the extractor class can only be those who are also in the market to sell extracted spring water to Pine Valley's bottler/customers. Plaintiff generally alleges that the class of extractors totals ninety (90).



Exh. V at pp. 8-10.

*Id.*

*Id.* at pp. 15-16.

*Id.* at pp. 17-18.

Exh. V at pp. 17-18. Upon consideration of these relevant

factors (which Plaintiff and his expert have failed to do), the size of the class becomes insufficiently numerous for class certification.

    b.  <u>The Bottler Class</u>

  Plaintiff has admitted that he has not bottled water since January 8, 2012, thus the relevant class is almost impossible to define as there are no bottlers similarly situated to him. But assuming, *arguendo*, that a bottler class exists, Plaintiff has failed to meet his burden of establishing numerosity by a preponderance of the evidence. Plaintiff merely alleges that the class should be nationwide, which is absurd in light of the geographic nature of the spring water business. ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████

    iii.  <u>Plaintiff has failed to meet the requirements under Rule 23(b)(2)</u>

  Plaintiff seeks to certify a Rule 23(b)(2) class for injunctive relief. A party seeking certification under Rule 23(b)(2) must establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiff contends that the declaratory and injunctive relief sought will equally apply to all class members. "[T]he class would benefit all the same even were Plaintiff to pursue his claim individually and obtain the same declaratory and injunctive relief he seeks here on behalf of all class members." This begs the question as to why a class action is superior to an individual action. If the same result can be achieved on the basis of an individual lawsuit, why waste

judicial resources, and party resources (notice, etc.) to proceed as a class?  Simply put, there is no need for a class as to the injunctive relief sought.

Further, Plaintiff has offered no evidence that the injunctive relief sought will benefit any other extractor, bottler or even him.  A party seeking injunctive relief under the Lanham Act is required to demonstrate that it is likely to suffer irreparable harm if an injunction is not granted. *Ferry Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205 (3d Cir. 2014). Plaintiff, not presently a competitor of Pine Valley, and is not suffering any harm as result of the alleged misrepresentation of its water as spring water, let alone irreparable harm. The relief sought merely is an attempt to achieve Plaintiff's personal desire to see Pine Valley be declared not a true spring source and destroy Land's business.   Thus, Plaintiff is not an adequate representative of the Class for which he seeks to injunctive relief. ████████████████████████

████████████████████████████████████████████████████████

████ Exh. V at pp. 13-15. Thus, Plaintiff has not met his burden to satisfy that certification of a class under 23(b)(2) for injunctive relief is warranted.

    iv.    <u>Plaintiff has failed to meet the requirements under Rule 23(b)(3)</u>

        a.    <u>Common issues do not predominate</u>

Rule 23(b)(3)'s predominance standard, while also focusing on common issues of law or fact, imposes the more rigorous obligation that issues common to the class *predominate* over those affecting only individual class members.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008), as amended (Jan. 16, 2009).  Thus, "where an action is to proceed under Rule 23(b)(3), the commonality requirement is subsumed by the predominance

requirement." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (internal quotations omitted)."Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . a standard far more demanding than the commonality requirement of Rule 23(a)." *Hydrogen Peroxide*, 552 F.3d at 310-11 (internal quotations and citations omitted). In other words, predominance is only satisfied where common issues *overwhelm* individual questions. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 (3d Cir. 2015). The court must examine the elements of the plaintiffs' claims "through the prism of the predominance requirement to determine whether they are capable of proof with common, class wide evidence." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 (3d Cir. 2012). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Hernandez*, 2013 WL 2245894, at *7 (citation omitted).

*Western States Wholesale, Inc. v. Synthetic Indus., Inc.* provides guidance. 206 F.R.D. 271, 277-78 (C.D. Cal. 2002). In *Western States*, the plaintiffs attempted to certify a class of wire mesh manufacturers in a Lanham Act Section 43(a) false advertising case against the manufacturer of a synthetic mesh material that claimed its product was a substitute for wire mesh. The plaintiffs argued that the court could presume injury because (1) the defendant claimed that its product was a substitute for defendants product, (2) the defendant sold its product in the same geographical area as the plaintiff, and (3) the defendant made sales of its product as a replacement for the plaintiff's product. The court held that the plaintiff's argument "glosses over the fact" that the plaintiff's "will have to produce, as will each class member," evidence that the "alleged false advertising caused customers to substitute" the defendant's synthetic mesh product for the plaintiff's wire mesh. *Id.* at 278  Although the court

acknowledged that proof of the false advertising would create a presumption that consumers were deceived, . . ." a class member still had the burden to prove that such deception injured it in order to recover damages for lost sales and market share." *Id.*

Likewise, the highly individualized questions of injury and causation, as well as fundamental differences among members of the proposed class, preclude a finding of predominance. The touchstone inquiry of whether a plaintiff a true extractor or bottler of spring water is a complex inquiry that involves hydrogeological data and expert opinions as to each putative class member. Once that determination is made, there are numerous additional inquiries regarding the economic realities of the class members (e.g., transportation costs, capacity, contractual obligations, licensing and permit status, and operating efficiency) in order to determine whether a class member has suffered competitive injury as required by the Lanham Act. Of course, this analysis is further complicated by the fact that plaintiff attempts to certify a class comprised of both bottlers and extractors whose economic considerations will necessarily differ. Moreover, as in *Western States*, each class member also has to prove that "the alleged false advertising" caused customers to purchase Defendants' water over the putative plaintiff's water. Plaintiff has offered no reliable methodology for how to determine class-wide proof of causation. Because of the individualized inquiries that stand in the way of a determination of liability under the Lanham Act, the predominance requirement of Rule 23(b)(3) is not met and class certification should be denied.

### b.  A class action is not a superior method of adjudication

The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication. *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 632 (3d Cir. 1996); *Katz v. Carte Blanche*

*Corp.,* 496 F.2d 747, 757 (3d Cir.) (en banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974)). As set forth above, proceeding with Plaintiff's claims as a class action has serious problems, which, when compared to other means of adjudication (i.e, an individual claim by Plaintiff or the joinder of a few similarly situated plaintiffs – if they exist --), is not outweighed by its advantages. The proposed class action suffers serious problems in both efficiency and fairness. In terms of efficiency, there are simply too many uncommon issues, beginning with the threshold issue of class membership. The class method also suffers from serious problems in the fairness it affords Defendants. This is not a case where the amounts at stake for individuals are so small that separate suits would be impracticable, and yet, no other extractor or bottler has verbalized an interest in proceeding or has made similar allegations on their own. This is especially curious since Pine Valley has operated as a spring source since 2001. Instead, the class action tool is being used as a weapon by Plaintiff ███████████

██████████████████████

## IV.    CONCLUSION

For all of the foregoing reasons, Defendants James J. Land, Jr. and Ice River Springs USA, Inc. respectfully request that the Court deny Plaintiff's Motion for Class Certification.

WEIR & PARTNERS LLP

By: /s/ Brett A. Datto
    Brett A. Datto, Esquire
    Gina Stowe, Esquire
    Amy R. Brandt, Esquire
    Patrick T. Krenicky, Esquire
    1339 Chestnut St., Suite 500
    Philadelphia, PA 19107
    brett.datto@weirpartners.com
    gstowe@weirpartners.com
    abrandt@weirpartners.com
    pkrenicky@weirpartners.com

Date: July 8, 2019