IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STANLEY F. FROMPOVICZ,<br>Plaintiff, | CIVIL ACTION |
| v. | |
| NIAGARA BOTTLING, LLC, ICE RIVER SPRINGS WATER CO, INC., AND JAMES J. LAND, JR.,<br>Defendants. | NO. 18-54 |

## MEMORANDUM OPINION

This case concerns allegations that certain entities in the water extraction and bottling industries falsely labeled and sold "well water" as the more desirable "spring water." In an earlier opinion, this Court found that Plaintiff Stanley Frompovicz made out viable false advertising claims under the Lanham Act, 15 U.S.C. § 1125(a), against Defendants James Land, Niagara Bottling Co., LLC ("Niagara"), and Ice River Springs Water Co. Inc. ("Ice River"). *Frompovicz v. Niagara Bottling, LLC*, 337 F. Supp.3d 498, 503 (E.D. Pa. 2018).[1] Plaintiff now moves to certify two putative classes: one on behalf of water extractors, and the other on behalf of water bottlers.

For the reasons that follow, Plaintiff's motion to certify will be denied.

I.     BACKGROUND

A. The Parties

Plaintiff and Defendants are in the bottled water business. Defendant Land is a water extractor—he owns and operates multiple water sources in Pennsylvania, from which he collects and sells water in bulk to bottlers. One such extraction site is Pine Valley Farm Springs ("Pine

---

[1] The Court also dismissed Plaintiff's claims against a fourth Defendant, Crossroads Beverage Group. *See id.*, 337 F. Supp.3d at 510.

Valley").

Both Niagara and Ice River are bottlers—they purchase water in bulk from extractors, bottle it, and sell it to consumers. Niagara and Ice River operate bottling plants across the country, and each operates a bottling plant in Allentown, Pennsylvania. Because shipping water in bulk is costly, Niagara and Ice River source water from multiple, nearby extractors to meet the needs of their bottling plants—Niagara's Allentown facility, for example, uses water from fourteen sources, owned by seven separate entities, all located within sixty-two miles of the facility. Both Niagara and Ice River source water from Land's Pine Valley site for their Allentown plants.

Plaintiff has been in both the bottling and extraction business. Plaintiff's extraction business consists of two water sites in Pennsylvania: Far Away Springs Brandonville and Far Away Springs Auburn. In 2011, Plaintiff entered into an agreement to sell all water extracted from Brandonville to another bottler, Signature Springs; that arrangement runs through 2036. The history of the Auburn site is more complicated. Plaintiff sold the Auburn water to various bottlers, including Niagara and Ice River. The Auburn site, however, was plagued by concerns about contamination and unreliable service, which disrupted Auburn's operation. In March 2013, Ice River notified Plaintiff that it would stop sourcing water from the Auburn site because of service interruptions. In 2014, Niagara entered into an agreement with Plaintiff to buy Auburn water; however, in June 2015, water from the Auburn site tested positive for *E. coli*, and the Pennsylvania Department of Environmental Protection ("DEP") shut down the facility. That order remains in place to this day. As for Plaintiff's bottling business, while the precise nature of the operation is unclear, Plaintiff stated that he has not bottled water since at least January 8, 2012.

## B. The Dispute & Its History

The thrust of the parties' dispute concerns the water Land extracts from Pine Valley and then sells to Niagara and Ice River—specifically, whether the water extracted and sold is the more desirable "spring water" or the less desirable "well water." Spring water enjoys pride of place in the bottled water industry, commanding a premium price because consumers prefer it to other types of water, including well water. To be lawfully labeled as such, spring water must meet certain minimum requirements set forth by the Food and Drug Administration ("FDA"). Specifically, the water must (1) be drawn from an "[a]pproved source," 21 C.F.R. § 129.35, and (2) meet the Standard of Identity for spring water, 21 C.F.R. § 165.110(a)(2)(vi). The FDA also specifies that extractors and bottlers must comply with supplementary state and local rules regulating water extraction and bottling. 21 C.F.R. § 129.35. In Pennsylvania, the DEP regulates bulk water hauling and water bottling systems, consistent with the state's Safe Drinking Water Program. DEP does not, however, define "spring" or "spring water" and does not maintain records or lists that identify water sources as supplying spring water.

Plaintiff claims that the water extracted from Pine Valley does not meet the FDA's definition of spring water, and is, in fact, well water. Plaintiff primarily bases his claims on a walk-through of the Pine Valley site that he conducted in 1997 and a hydrologist report for the site that he reviewed in 2008. Plaintiff further claims that Land fraudulently markets and sells Pine Valley well water as the more desirable spring water, thereby diminishing Plaintiff's market to sell legitimate spring water. As to Niagara and Ice River, Plaintiff claims that they ceased buying water from him to pursue a fraudulent plan to sell Defendant Land's spuriously labeled water to consumers, causing Plaintiff to lose sales. *Frompovicz*, 337 F. Supp.3d at 510.

The record is replete with evidence of Plaintiff's deep-seated animosity towards Land. In

an email to a Niagara employee from June 2008, Plaintiff asserted that Pine Valley's water was not true spring water. In 2013, Plaintiff filed a complaint with the FDA, raising many of the same claims asserted here. In 2017, Plaintiff filed a complaint with the DEP, claiming that the organization turned a blind eye to Land's violation of state water regulations. In a 2017 email to a Niagara employee, Plaintiff stated that he "intend[ed] to do all that I can to finish [Land] off. That is a promise." And in the course of this litigation, Plaintiff testified that he harbored "animus, absolutely," against Land.

## C. Procedural History

Plaintiff filed this suit in 2018. Defendants moved to dismiss the Complaint for failure to state a claim, which the Court granted in part and denied in part. *See Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp.3d 603 (E.D. Pa 2018). Plaintiff then filed an Amended Complaint, and Defendants again moved to dismiss. The Court granted the motion in part and denied in part, finding *inter alia* that Plaintiff made out viable Lanham Act false advertising claims against Land, Ice River, and Niagara. *Frompovicz*, 337 F. Supp.3d at 510.

Plaintiff now moves to certify the following two classes: (1) "All persons or entities who, between January 8, 2012 and the present . . . extracted spring water for sale within 400 miles of either Pine Valley in New Ringgold, PA, Niagara's bottling plants in Allentown or Hamburg, PA, or Ice River's bottling plan in Allentown, PA" (hereinafter "the Extractor Class"); and, (2) "All persons or entities who, between January 8, 2012 and the present . . . bottled spring water for sale in the United States," (hereinafter "the Bottler Class"). Plaintiff seeks both injunctive relief and damages on the putative class claims.

4

## II. DISCUSSION

### A. Legal Standard

"[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). The Third Circuit has explained that Rule 23(a) requires that:

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

*Id.* at 590–91 (quoting Fed. R. Civ. P. 23(a)).

"If those requirements are met, a district court must then find that the class fits within one of the three categories of class actions in Rule 23(b)." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010). Here, Plaintiff seeks to certify a class under both 23(b)(2), which governs class claims for injunctive relief, and Rule 23(b)(3), which governs class claims for damages. A class action "fits" under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2), and under Rule 23(b)(3) where "common questions of law or fact predominate (predominance), and . . . the class action is the superior method for adjudication (superiority)," *In re Cmty. Bank*, 622 F.3d at 291. In addition, the Third Circuit has explained that at least for a Rule 23(b)(3) class, the "class must be currently and readily ascertainable based on objective criteria"—the ascertainability requirement. *Marcus*, 687 F.3d at 593.

"The requirements set out in Rule 23 are not mere pleading rules," *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008); rather, "[t]he party seeking

5

certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence," *Marcus*, 687 F.3d at 591. Accordingly, in "determin[ing] whether there is actual conformance with Rule 23, a district court must conduct a rigorous analysis of the evidence and arguments put forth," and "resolve all factual or legal disputes relevant to class certification." *Id*. (internal quotation marks omitted).

## B. Application

Defendants attack Plaintiff's putative classes from all sides, arguing Plaintiff failed to meet the requirements of Rule 23(a), failed to meet the requirements of Rule 23(b), and failed to meet the ascertainability requirement. The Court need not address all of Defendant's arguments, however, because Plaintiff's motion for class certification fails at the first step: he has failed to meet the threshold requirements of Rule 23(a).[2]

### 1. The Bottler Class

Plaintiff's motion to certify the Bottler Class will be denied because he is not a member of the class, and "[i]t is axiomatic that the lead plaintiff must fit the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 360 (3d Cir. 2013). "Although different courts have asserted different origins for this axiom,"—some sounding in standing, others in Rule 23(a)(4)'s adequacy requirement—"they arrive at the same conclusion: where the lead plaintiff does not fit the class definition, the class may not be certified." *Id.* at 360.

Here, Plaintiff seeks to certify a class of "[a]ll persons or entities who, between January 8, 2012 and the present . . . bottled spring water for sale in the United States." But, by his own

---

[2] Relatedly, the Court need not decide Defendants' motion to exclude Plaintiff's proposed expert, Dr. Jeffery A. Stec, who offered testimony on "whether there is a reasonable and reliable method for calculating damages for the class" and prepared a report to that effect. Even assuming, *arguendo*, that Stec's damages testimony is admissible, Plaintiff has still not established the requirements of Rule 23(a). Accordingly, Defendants' motion to exclude Plaintiff's proposed expert will be denied as moot because Plaintiff's motion to certify will be denied. To the extent that Defendants argue the Court should not credit Plaintiff's arguments relying on Stec's report as support for class certification, the Court addresses the relevance of Stec's report to these arguments in Section B.2.i of this opinion.

admission, Plaintiff "was not bottling water as spring water for human consumption" or "selling bottled water" for the entirety of the putative class period—that is, at any point "on or after January 8, 2012." Accordingly, Plaintiff "does not fit the class definition," and the motion to certify Bottler Class will be denied.

### 2. The Extractor Class

The Extractor Class fares no better because Plaintiff has not established the numerosity, typicality, or adequacy of representation elements of Rule 23(a).

#### i. *Numerosity*

Plaintiff has not established by a preponderance of evidence that the proposed Extractor Class is so numerous that joinder is impracticable. "There is no minimum number of members needed for a suit to proceed as a class action," but "'generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *Marcus*, 687 F.3d at 595 (quoting *Stewart v. Abraham*, 725 F.3d 220, 226–27 (3d Cir. 2001)). While Rule 23(a)(1) "does not require a plaintiff to offer direct evidence of the exact number of and identities of the class members . . . in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Id.* at 596. And, like all Rule 23 requirements, numerosity must be proven by a preponderance of the evidence. *Id.* at 595.

Here, Plaintiff defines the Extractor Class as: "All persons or entities who, between January 8, 2012 and the present . . . extracted spring water for sale within 400 miles of either Pine Valley in New Ringgold, PA, Niagara's bottling plants in Allentown or Hamburg, PA, or Ice River's bottling plan in Allentown, PA." Plaintiff asserts that there are "at least 90 spring

7

water extractors within 400 miles of Allentown, Pennsylvania," and that "Land . . . averred under oath that he directly competes with at least 23 of these extractors," meaning the "proposed class . . . easily clears the numerosity requirement." In support of these assertions, Plaintiff cites only an affidavit from Land produced in separate litigation and Stec's proposed expert report.

There are, however, several problems with Plaintiff's assertions, and, in particular, his reliance on Stec's report, beginning with the geographic area actually covered by the class definition. *See Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 497 (E.D. Pa. 2009) (considering the viability of the class definition in the context of the Rule 23(a) numerosity analysis).[3] Plaintiff has failed to put forth evidence establishing that a 400-mile radius around Allentown, Pennsylvania is the appropriate area from which to determine the class size. *See Kemblesville HHMO Ctr., LLC v. Landhope Realty Co.*, 2011 WL 3240779, at *7 (E.D. Pa. July 28, 2011) (holding plaintiff failed to meet numerosity requirement because the geographically defined class was overbroad); *cf. Marcus*, 687 F.3d at 595 (instructing district courts to examine the "geographic area actually covered by the class definition"). The only evidence proffered by Plaintiff to support the 400-mile radius figure comes from Stec's report—specifically, Stec's observation that Niagara's Houston, Texas bottling facility sources spring water from as far as 400 miles away. But, in deposition testimony, Stec explained that he was "not asked" to determine whether "400 miles is the correct geographic market," and "did not develop an opinion as to the relevant geographic market for the extractor class in this case." Instead, the 400-mile figure was provided by Plaintiff's counsel, and Stec was "asked to presume that that [was] the proposed class for the extractors." Accordingly, Plaintiff has offered no evidence that

---

[3] Some courts, however, "have considered the sufficiency of the class definition itself before embarking on a Rule 23 analysis." *Jackson v. Se. Pennsylvania Transp. Auth.*, 260 F.R.D. 168, 182 (E.D. Pa. 2009); *see, e.g.*, *McDonough v. Toys R Us*, 638 F.Supp.2d 461, 473–74 (E.D. Pa. 2009). Because the class definition bears most directly on numerosity, the Court will consider the class definition within the context of the Rule 23(a)(1) analysis.

8

a 400-mile radius is the geographic area actually covered by Extractor Class,[4] and thus the Court is unable to determine the size of the proposed class based on that figure.[5]

There are also problems with Plaintiff's assertion as to the number of extractors in the proposed class. Plaintiff makes two assertions regarding the proposed class's size: first, Plaintiff states that there are "at least 90 spring water extractors within 400 miles of Allentown, Pennsylvania," citing Stec's report for the figure, and, second, Plaintiff states that Land averred that he "directly competes with at least 23 of [the 90] extractors." Neither assertion, however, finds support in the record. As to the 90 purported extractors, Stec's report makes clear that the figure—like the 400-mile radius figure—was provided to Stec by Plaintiff's counsel, and not the product of Stec's own analysis: "[Plaintiff's] Counsel has identified at least 90 spring water sources within 400 miles of Allentown." In fact, the figure appears to be taken from a spreadsheet that Stec states was "created and provided by counsel." Plaintiff has offered no evidence, then, other than his counsel's own say-so, to support the assertion that there are ninety spring water extractors within the geographic scope for the Extractor Class. *Marcus*, 687 F.3d at 596 ("Mere speculation is insufficient" to establish "that Rule 23's requirements have been met.").

As to Land's affidavit, Plaintiff mischaracterizes the testimony. In the affidavit, Land

---

[4] And, indeed, Defendants offer strong evidence that the 400-mile figure is overbroad: shipping water in bulk is costly, meaning bottlers source water as near to bottling facilities as possible; Niagara's Allentown facility sources water from extractors all located within sixty-two miles of the facility; and, the hydrogeological features of Eastern Pennsylvania—where spring water is plentiful—differ markedly from the area surrounding Houston, Texas—where it is not, making comparisons to Houston inapposite.

[5] Plaintiff downplays the relevance of the 400-mile figure at this stage of the proceedings by arguing that "[a] plaintiff need not prove the relevant geographic market at class certification." However, Plaintiff defines the class with reference to that figure; therefore, the figure is relevant to determining the size of the proposed class. *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158 (E.D. Pa. 2016), which addressed the question of a geographic market for purposes of determining *predominance*—rather than for the purpose of determining *numerosity*—is not to the contrary.

9

states that MC Resource Development Company ("MCRDC")—the entity owned by Land, which operates Pine Valley, amongst other water *sources*—"competes with 23 different water *sources* for market share in the bottled water segment." Land's affidavit talks only of water sources, not water extractors. The proposed class, however, consists of "persons or entities who . . . extracted spring water," not water sources. Land's affidavit, then, does not provide evidentiary support as to the number of class members because extractors can and do operate several water sources, as Land's affidavit demonstrates: Land avers that MCRDC owns and operates five different water sources.

To summarize, Plaintiff has failed to establish that the geographic area actually covered by the Extractor Class extends as far as he claims. Even within that geographic area, Plaintiff's assertions as to the number of class members lacks evidentiary support. And the limited "evidence" put forth—in the form of a spreadsheet compiled by Plaintiff's counsel—actually contradicts his assertions, indicating that there are less than forty members in the proposed class. Plaintiff therefore falls considerably short of meeting Rule 23(a)(1)'s numerosity requirement.

    *ii.    Typicality*

Plaintiff's Lanham Act claims are also not typical of the proposed class. Rule 23(a)(3)'s typicality requirement addresses "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marcus*, 687 F.3d at 598 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982)). Typicality therefore "screen[s] out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Id.* (internal quotation marks omitted). "Since one cannot assess whether an individual is sufficiently similar to the class as a whole

without knowing something about both the individual and the class, courts must consider the attributes of the proposed representatives, the class as a whole, and the similarity between the proposed representatives and the class," focusing on "the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597–98 (3d Cir. 2009).

Plaintiff asserts that his Lanham Act false advertising claims are typical of the class because all suffered the same injury from Defendants' mislabeling of Pine Valley well water. Specifically, by fraudulently marketing and selling Pine Valley well water as the more desirable spring water, Defendants "displac[ed] class members' own true spring water in the marketplace." There are two factors, however, that make Plaintiff's claims atypical of the class he seeks to represent.

First, for much of the class period, Plaintiff's individual circumstances were different from that of the proposed class. As noted, Plaintiff owns two spring water extraction sites: Far Away Springs Brandonville and Far Away Springs Auburn. For the entirety of the class period—that is, from January 8, 2012 to the present—spring water extracted from the Brandonville site was sold to Signature Springs, another bottler, under the terms of an exclusive agreement entered into between the parties in 2011. As for the Auburn site, Plaintiff has not extracted spring water from the site since June 2015 because of a DEP order that shut down the facility.[6] Thus, the evidence suggests that throughout the class period Plaintiff did not

---

[6] Even prior to 2015, when Plaintiff sold spring water extracted from Auburn to bottlers, the evidence indicates that Plaintiff suffered loss of sales due to concerns about contamination and unreliable service at the Auburn site, not because of Land's false advertising.

11

consistently sell spring water—in Plaintiff's own words—"in the marketplace," and thus likely did not suffer the same harm as that of the proposed class because of factual circumstances unique to Plaintiff, namely, his exclusive contract with Signature Springs and the problems that plagued the Auburn site. While that fact does not necessarily doom Plaintiff's Lanham Act claims, it does make them atypical of the class he seeks to represent. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 598 ("[I]ndividual factual circumstances underlying the legal theory and legal claims of the representative must be sufficiently similar to those of the class").

Second, Plaintiff's claims are atypical because they are subject to defenses unique to him—specifically, whether the claims are untimely. *See In re Cmty. Bank of N. Va.*, 622 F.3d at 293 (noting that a "statute-of-limitations defenses [may] preclude a finding of typicality under Rule 23(a)" where "the named plaintiffs' claims are untimely (and thus not typical of the class)") (citing *Franze v. Equitable Assur.*, 296 F.3d 1250, 1254 (11th Cir. 2002)). "Because the Lanham Act does not specify a statute of limitations, courts must adopt a local time limitation as federal law," based on the "state claim [that] is the most appropriate or most analogous to . . . claims that may be brought under § 43(a) of the Lanham Act." *Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 135 (3d Cir. 2005) (internal quotation marks omitted). Where, as here, the false advertising claims arise in Pennsylvania, the Third Circuit has held that Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), "which has a six-year 'catch-all' statute of limitation, is the best choice." *Id.* Under the laches doctrine, once the statute of limitations period has run on a Lanham Act claim, "the defendant enjoys the benefit of a presumption of inexcusable delay and prejudice," which can be rebutted only upon a showing that the "delay was excusable and that [the] delay did not prejudice the defendant." *Id*. at 139.

The evidence indicates, if not necessarily establishes,[7] that Plaintiff's Lanham Act claims are time-barred. According to his own testimony, as of 2009, Plaintiff knew both that Land was allegedly selling well water as spring water and that bottlers, including Niagara, cancelled their contracts with Plaintiff and started purchasing water from Pine Valley instead—information that would trigger the statute of limitations period. *See Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 143–44 (3d Cir. 1997) (holding limitations period for Lanham Act claim "begins to run at the time the right to institute and maintain the suit arises") (internal quotation marks omitted). But Plaintiff did not initiate this suit until 2018, well after the six-year statute of limitations period had run. And while Plaintiff may establish that his claims are not time-barred by showing any delay in bringing suit was "excusable" and "did not prejudice the defendant," *Santana*, 401 F.3d at 139, doing so would require "devot[ion] of time and effort to the [individual] defense at the expense of issues that are common and controlling for the class," *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 598. Such a misalignment in the "representative's interests" and "those of the class" is precisely the "concern" that the typicality requirement protects against. *Id.*; *see also J.H. Cohn & Co. v. Am. Appraisal Assocs.,* 628 F.2d 994, 999 (7th Cir. 1980) ("[T]he presence of even an arguable defense peculiar to the named plaintiff . . . may destroy the required typicality of the class," the fear being "that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer.") (internal citations omitted).

Accordingly, Plaintiff has failed to establish that his claims are typical of the class as required by Rule 23(a)(3).

---

[7] The question here is not whether Plaintiff's claims are actually time-barred; rather, the issue is whether Plaintiff's claims are subject to unique defenses that make them atypical of the class. The evidence in the record indicates that is the case here.

13

### iii. *Adequacy of Representation*

Lastly, Plaintiff's hostility towards Land make him an inadequate representative of the class. Rule 23(a)(4)'s adequacy requirement "has two components designed to ensure that absentees' interests are fully pursued." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 602. "First, the adequacy inquiry 'tests the qualifications of the counsel to represent the class.'" *Id*. (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004)). Here, no issue has been raised regarding the adequacy of Plaintiff's counsel. "The second component of the adequacy inquiry seeks 'to uncover conflicts of interests between named parties and the class they seek to represent.'" *Id*. (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532)). Such conflicts may arise where "plaintiff's vindictiveness toward the defendants" make the class representatives interests antagonistic to those of the class. *Vanderbilt v. Geo-Energy Ltd.*, 725 F.2d 204, 207 (3d Cir. 1983) (quoting *Davis v. Comed, Inc.,* 619 F.2d 588, 593–94 (6th Cir. 1980)).

*Kamerman v. Ockap Corp.*, 112 F.R.D. 195 (S.D.N.Y. 1986), is illustrative. There, the district court held that the proposed class representative failed the adequacy requirement because the plaintiff harbored "an unduly antagonistic" stance against the defendants, as evidenced by the fact that plaintiff "ha[d] been involved in various disputes with defendants," "[f]or at least 10 years[.]" *Id*. at 197. As the district court explained, "[w]hile the law is clear that a plaintiff's small personal animus is insufficient to render an otherwise qualified class representative inappropriate," the plaintiff's "long . . . history of prosecution of these defendants would override his amenability to negotiating with defendants, although beneficial to the class." *Id.* A plaintiff "motivated by spite, or a grudge," will not "'fairly and adequately protect the interests of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(4)); *see also Real Estate All., Ltd. v. Sarkisian*, 2007

WL 2814591, at *4 (E.D. Pa. Sept. 24, 2007) (holding proposed class representative failed the adequacy requirement because "[t]he level of personal animus that [plaintiff] displays toward [defendants] suggests that [plaintiff's] goals for this litigation stretch beyond simply determining whether [defendants'] patent is valid and has been infringed [plaintiff's] countersuit suggests that she . . . would be unable to represent the class effectively in settlement negotiations."); *Sheehan v. Purolator, Inc.*, 103 F.R.D. 641, 652 (S.D.N.Y. 1984) ("[P]reoccupation with peculiar retaliatory wrongs allegedly done to one may well make such a person an inadequate representative of the class.").

Like the proposed class representative in *Kamerman*, Plaintiff's long-standing grudge against Land renders him an inadequate class representative. In this very litigation, Plaintiff testified that he harbored "animus, absolutely," against Land, and that pursuing claims against Land amounted to a "pastime" or "full time" occupation. In addition, the record demonstrates that Plaintiff has spent much of the last decade prosecuting complaints against Land: in 2008, Plaintiff told a Niagara employee that Pine Valley is not true spring water; in 2013, Plaintiff filed a complaint with the FDA concerning Land; in 2017, Plaintiff filed a complaint with the DEP about Land; also in 2017, Plaintiff stated he "intend[ed] to do all that I can to finish [Land] off. That is a promise." Plaintiff's antagonism toward Land "suggest that [Plaintiff's] goals for this litigation stretch beyond simply determining whether" Defendants violated the Lanham Act. *Sarkisian*, 2007 WL 2814591, at *4, and would inhibit Plaintiff's ability to fairly represent the interest of the proposed class in, for example, settlement negotiations, *Kamerman*, 112 F.R.D. at 197. Accordingly, Plaintiff has not met Rule 23(a)(4)'s adequacy of representation requirement.

\*   \*   \*

In sum, Plaintiff has failed to carry his burden of establishing the threshold requirements

of Rule 23(a) for both the Bottler and Extractor Classes. His motion to certify the proposed classes will be denied accordingly.

An appropriate order follows.

**October 9, 2019**                              **BY THE COURT:**

                                                 **/s/Wendy Beetlestone, J.**

                                                 **_____**
                                                 **WENDY BEETLESTONE, J.**