IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STANLEY F. FROMPOVICZ,**<br>          **Plaintiff,**<br><br>          v.<br><br>**NIAGARA BOTTLING, LLC, ICE RIVER SPRINGS WATER CO, INC., AND JAMES J. LAND, JR.,**<br>          **Defendants.** | **CIVIL ACTION**<br><br><br><br><br>**NO.  18-0054** |

**MEMORANDUM OPINION**

      This case – which has been before the Court for going on three years and has been the subject of three opinions – was finally settled, or so the Court was informed, after weeks of negotiations facilitated by Magistrate Judge Lloret and an additional month of draft exchanges between the parties.  The resulting twenty-four-page agreement ("Settlement Agreement" or "Agreement") was signed by Plaintiff Stanley F. Frompovicz ("Plaintiff" or "Frompovicz") and Defendants Niagara Bottling, LLC ("Niagara") and Ice River Springs USA, Inc. ("Ice River").  Niagara and Ice River then submitted payment to Plaintiff in accord with the terms of the Agreement.  It seemed that everything was going swimmingly until the remaining party, Defendant James J. Land, Jr. ("Land"), objected to the way he was identified in the document.  He refused to sign it and sent an annotated version – making some redactions and adding some proposed terms.

      Niagara and Frompovicz now move the Court to enforce the Settlement Agreement against Land.  Both parties also ask, pursuant to a provision of the Agreement, to be awarded their costs and fees related to this motion.  The question before the Court is whether the Settlement Agreement is enforceable despite Land's refusal to execute it and to comply with its

1

terms.  For the reasons that follow, the motion will be granted.

### A. BACKGROUND

The underlying dispute here concerns when spring water can be sold as such, and when it cannot.  Frompovicz alleges that the Defendants schemed to sell mislabeled well water as spring water which diminished his market to sell legitimate spring water.  But the substance of the allegation is not before the Court here.  Rather the present dispute centers around whether or not a settlement was reached.  And, the crux of that disagreement focuses on the nomenclature used throughout the litigation to refer to Defendant Land.

Specifically, from the outset the Complaint's caption named as a Defendant – in addition to Niagara and Ice River – "James J. Land, Jr., *d/b/a* MC Resource Development, *a/k/a* Pine Valley Farms Springs."  In his motion to dismiss the Complaint, referring to that caption, Land stated that he "vehemently disputes this characterization."  And, in his Answer he denied doing business as "MC Resource Development, a/k/a Pine Valley Farms Springs" ("MCRD") stating rather that MCRD is a Pennsylvania partnership that maintains all corporate formalities.  Nevertheless, he did not seek to amend the caption.

Neither did he do so after the Court, in three separate opinions, reflected the caption in its analysis.  *Frompovicz v. Niagara Bottling, LLC*, 420 F. Supp.3d 361, 369 (E.D. Pa. 2019) (referring to MCRD as "the entity owned by Land, which operates Pine Valley, amongst other water sources"); *Frompovicz v. Niagara Bottling, LLC*, 337 F. Supp.3d 498, 503 n.2 (E.D. Pa. 2018) ("Land is the owner and listed manager of MC Resource Development, which also does business under the fictitious name Pine Valley Farms Springs.  According to the Amended Complaint, MC Resource Development is the alter ego of James Land."); *Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp.3d 603, 607 n.2 (E.D. Pa. 2018) (same).  And so Land remains

2

named as James J. Land, Jr., d/b/a MC Resource Development, a/k/a Pine Valley Farms Springs in the case caption.

That was the state of play going into settlement negotiations in the spring and winter of 2019, when the parties participated in multiple settlement meetings facilitated by Magistrate Judge Lloret. On December 27, 2019, the parties informed the Court that they had reached a confidential settlement in principle whereby Niagara, Ice River, and Land would each pay a set amount to Frompovicz in exchange for the dismissal of his lawsuit and release of future claims. Over the next month, the parties reduced this agreement to a detailed writing. First, the Defendants worked amongst themselves to draft the agreement. Then, the Defendants presented a draft that was "agreed among and acceptable to all defendants" to the Plaintiff. Next, the Defendants and Plaintiff negotiated and exchanged at least four drafts of a long-form written agreement detailing the settlement. The Defendants collaborated and agreed upon each version before returning it to the Plaintiff. The final product was a confidential, twenty-four-page written document.

In every draft, Land was identified as James J. Land, Jr. at the beginning of the document. Immediately below, in the recitals section, he was prominently and consistently identified as he was in the caption of this case: "James J. Land, Jr. d/b/a MC Resource Development a/k/a Pine Valley Farms Springs." Neither Land nor his attorney objected to this manner of identifying Land: not while the Defendants were drafting the agreement, nor while the parties were exchanging drafts and finalizing the terms of the agreement. And, whereas the recitals note that Ice River – an entity represented by the same attorney as Land – was "incorrectly named as Ice River Springs Water Co. Inc.," nothing indicates that Land or his attorney sought such a reservation for Land.

On February 13, 2020, Defendants provided a final redline copy of the agreement for Plaintiff's approval. As he had been from the inception, Land was named in the recitals as "James J. Land, Jr. d/b/a MC Resource Development a/k/a Pine Valley Farms Springs." On February 17, 2020, counsel for Plaintiff accepted the most recent draft, and Plaintiff signed and executed a final "Executed Version" of the Agreement. Defendants Niagara and Ice River likewise executed the final Agreement within a few days. Soon after, Niagara and Ice River both paid Plaintiff according to the Agreement. At that point, the only party who had not signed and paid his share was Land.

One week later, Land did what he had not done at any point during the settlement discussions: he objected to how he was identified in the Settlement Agreement. Two days later, Land's counsel circulated a revised version of the Agreement with changes in redline. On March 5, 2020, Land's counsel circulated yet another version, with handwritten edits initialed by Land. In the cover email to the March 5th version, Land's counsel explained that Land had executed this unilaterally revised version of the Agreement and was prepared to make payment within fourteen days. Niagara objected to Land's *post hoc* changes to the Agreement. Despite an attempt to mediate the issue before Magistrate Judge Lloret in July 2020, the parties reached an impasse. Magistrate Judge Lloret ordered that, within fourteen days, the parties should either request additional time for negotiation or file any motions to enforce the Settlement Agreement. Niagara and Frompovicz then moved to enforce the Agreement against Land.

B. DISCUSSION

    A. **Jurisdiction Over the Enforcement Motion**

While the Settlement Agreement signed by all parties but Land provides for the dismissal of the suit in exchange for a payment, the parties have not yet sought dismissal of the case

because of Land's contention that he has not yet agreed to terms.  Because litigation of the dispute is on-going, there is jurisdiction to enforce the Agreement.  *See Bryan v. Erie Cty. Office of Children & Youth*, 752 F.3d 316, 322 (3d Cir. 2014); *see also Reed v. Am. Foods Equip. Co.*, 1994 WL 85700, at *1 (E.D. Pa. Mar. 18, 1994) (quotation omitted) ("[A] a district court has jurisdiction to enforce a settlement agreement entered into by litigants in a case pending before it.").[1]

## B. Enforcement of the Agreement Against Land

Whether the Settlement Agreement is valid and enforceable against Land, despite his refusal to sign the final written Agreement and his claim that he is incorrectly identified in the recital section of the Agreement, is the issue to be addressed.

Amicable settlement is the judicially preferred manner of resolving disputes, and it is therefore judicial policy to enforce voluntary settlement agreements.  *Ballato v. Gen. Elec.*, 147 F.R.D. 95, 97 (E.D. Pa. 1993) ("Settlement, of course is a judicially favored manner for terminating litigation and it is well-settled that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein." (citing *Fox v. Consol. Rail Corp.,* 739 F.2d 929, 932 (3rd Cir. 1984))).

"An agreement to settle a law suit, voluntarily entered into, is binding upon the parties,

---

[1] This case is clearly distinguishable from the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).  In *Kokkonen*, the district court dismissed the case with prejudice pursuant to the parties' final settlement agreement and related stipulation. *Id.* at 377.  When a party alleging a breach of the agreement later moved the district court to enforce the settlement, the district court did so under its purported "'inherent power' to do so." *Id.*  The Supreme Court reversed and held that the court lacked jurisdiction to enforce a settlement agreement after the case had been dismissed under Fed. R. of Civ. P. 41(a)(1)(ii). *Id.* at 378.  The Court explained that, because the order dismissing the suit did not incorporate the settlement agreement or purport to retain jurisdiction over the dispute in any manner, the district court lacked jurisdiction to enforce the agreement. *Id.* at 382 ("[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.").

whether or not made in the presence of the court, and even in the absence of a writing." *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970) (citations omitted). Since neither a formal writing nor a signature is required to form a binding settlement agreement, Land's refusal to execute the final long-form Agreement is not dispositive. *Sanchez-Garcia v. United States*, 2019 WL 1168311, at *2 (E.D. Pa. Mar. 13, 2019), *app. dismissed*, 802 F. App'x 37 (3d Cir. 2020) ("The fact that one of the parties subsequently refuses to sign the agreement will not preclude its enforcement.").

Given that a Settlement Agreement is a contract and subject to the traditional rules of contract interpretation, *Pennwalt Corp. v. Plough, Inc.,* 676 F.2d 77, 79 (3d Cir. 1982), under Pennsylvania law, which governs the Agreement, "a court may enforce a settlement agreement if: (1) [all] parties manifested an intention to be bound by the terms of the agreement; and (2) the terms are sufficiently definite to be specifically enforced." *Danois v. i3 Archive, Inc.*, 2015 WL 156015, at *5 (E.D. Pa. Jan. 12, 2015) (citation omitted); *see also Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) ("[T]he test for enforceability of an agreement is whether [the] parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." (quotation omitted)). While a writing is not required, the meticulous and detailed writing here provides sufficiently definite terms to be specifically enforced. Most importantly, the Settlement Agreement specifies the amount that Land is to pay in exchange for the release of Plaintiff's claims and Land does not dispute that it the amount he agreed to pay.

Land is bound by the Settlement Agreement to which he objectively manifested his assent to be bound. After attending multiple settlement conferences, informing the Court that an agreement had been reached, jointly drafting a written settlement agreement, and exchanging and

revising multiple drafts, the Defendants (including Land) presented a final document to the Plaintiff for approval. Throughout this process, Land's counsel confirmed multiple times that the Agreement, which consistently identified Land as "James J. Land, Jr. d/b/a MC Resource Development a/k/a Pine Valley Farms Springs," was acceptable to his client.[2] Land's "outward and objective manifestations of assent," including offering a final agreement that the Plaintiff accepted, bind Land. *Dugan v. O'Hara*, 125 F. Supp.3d 527, 535 (E.D. Pa. 2015) (quotation omitted). Thereafter, a binding agreement existed between the parties.

Further demonstrating the parties' intention to be bound by the settlement, both Niagara and Ice River have performed under the Agreement by paying Plaintiff. Land's belated refusal to the sign or execute, and unilateral attempts to alter, the Agreement do not defeat his previous objective manifestations of his intent to be bound.[3] *Hydrojet Servs., Inc. v. Reading Area Water Auth.*, 220 A.3d 1199, 1206 n.6 (Pa. Commw. 2019) ("'Once the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such.'" (quoting Restatement (Second) of Contracts § 42, Cmt. C (Am. Law Inst. 1981))). It is simply too late for Land to back out of the settlement by refusing to sign. "Permitting parties to void settlement agreements on a whim, because the agreement becomes unpalatable or the parties become greedier, would work a significant deterrence contrary to the federal policy of

---

[2] Because Land does not dispute that his counsel was authorized to represent him in reaching the settlement, it is presumed that he was. *See Wyndmoor Learning Ctr., Inc. v. City of Wilmington*, 1996 WL 117471, at *7 (E.D. Pa. Mar. 12, 1996) ("There is a presumption that any settlement agreement entered into by an attorney has been authorized."); *see also Pugh v. Super Fresh Food Mkts.*, 640 F. Supp. 1306, at 1307–08 ("The obligation to remain bound by a valid agreement of settlement duly entered into by counsel with the authority of his client is one which pervades the law." (quoting *Good v. Pa. R.R. Co.,* 384 F.2d 989, 990 (3d Cir.1967))).

[3] In fact, Land's attempts to alter the Agreement are plainly prohibited by the Agreement itself which provides that the "Agreement may not be altered, amended, waived, modified or otherwise changed in any respect . . . except by writing, duly executed by authorized representatives of all Parties."

encouraging settlement agreements." *Bayer v. CitiMortgage, Inc.*, 2014 WL 4187556, at *3 (M.D. Pa. Aug. 22, 2014) (quotations omitted); *cf. McCune v. First Jud. Dist. of Pa. Prob. Dep't*, 99 F. Supp.2d 565, 566 (E.D. Pa. 2000) (explaining that a settlement remains binding "even if it is clear that a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing." (citation omitted)).

Finally, Land argues that the Agreement is not enforceable against him because he lacks the power to bind MCRD to its terms. However, Land's contention is of no consequence. Movants only ask to enforce the Agreement against Land, who offers no explanation as to why his inability to bind MCRD would negate his *own* obligation to comply with the Agreement. If a party someday attempts to enforce this Agreement against a third-party known as MCRD – which Land may or may not represent or control – then a court might be asked to determine the effect of the Agreement on MCRD. Nevertheless, no such issue is present here.

### C. Costs and Attorney's Fees

Frompovicz and Niagara request that they be awarded the costs and attorneys' fees they incurred in litigating this motion. The Settlement Agreement provides:

> In any action to enforce the terms of this Agreement (the "Enforcement Action"), including any action to recover damages or indemnity for any violations herein, the prevailing party of the Enforcement Action shall be entitled to recover reasonable attorneys' fees and disbursements in addition to costs of suit.

Because the Agreement is valid and enforceable against Land, so too is this provision enforceable against him. Land shall therefore be required to pay Frompovicz's and Niagara's reasonable attorneys' fees and costs as they are the prevailing parties in this enforcement action. *See, e.g., Giblin v. KCI Ins. Agency, Inc.*, 2014 WL 3107298, at *7 (M.D. Pa. July 7, 2014) (enforcing settlement agreement, including provision entitling prevailing party to "payment of reasonable attorneys' fees and costs from the losing party").

\*       \*       \*

Over a lengthy negotiation process in which he fully participated through counsel, Land repeatedly approved an Agreement that identified him in an identical manner – and in the same manner he is listed in the caption of this case.  Land's later attempts to alter and refusal to sign the Settlement Agreement do not negate his previous assent to be bound by the Agreement.  This late stage refusal to comply with the settlement "disrupts the business of this Court, [and] comes too late, the bargain ha[s] already been struck."  *McCune*, 99 F. Supp.2d at 566.  Accordingly, the motion to enforce the Settlement Agreement will be granted.[4]  Furthermore, Land will be ordered to pay the costs and attorney's fees incurred by Plaintiff and Niagara in litigating this motion.

An appropriate order follows.

**October 16, 2020**                                                        **BY THE COURT:**

                                                                                              **/s/Wendy Beetlestone, J.**

                                                                                              _____
                                                                                              **WENDY BEETLESTONE, J.**

---

[4] Land's allegation that Plaintiff has breached the Agreement and related request for relief are not properly before the court and will not be considered.