**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STANLEY F. FROMPOVICZ,**<br>**Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **NIAGARA BOTTLING, LLC, ICE RIVER**<br>**SPRINGS WATER CO, INC., AND**<br>**JAMES J. LAND, JR.,**<br>**Defendants.** | **NO. 18-0054** |

**<u>MEMORANDUM OPINION</u>**

As detailed in an opinion and order dated October 16, 2020, this Court granted Plaintiff

Stanley Frompovicz ("Frompovicz") and Defendant Niagara Bottling, LLC ("Niagara")'s

motions to enforce against Defendant James J. Land ("Land") the parties' Settlement Agreement.

The order also granted Frompovicz's and Niagara's requests for attorneys' fees and costs

incurred in litigating that motion.  Given that all parties are familiar with the facts of the dispute

and the negotiations which resulted in the settlement, those facts will not be repeated here.  What

follows is a determination of the amount to be paid.

**I.     DISCUSSION**

The basis of Land's duty to pay the attorneys' fees and costs of Frompovicz and Niagara

is the fee-shifting provision in the parties' Settlement Agreement.  Under Pennsylvania law, as

applicable in this diversity action, courts will enforce a clear agreement for the breaching party to

pay the attorneys' fees and costs of the prevailing party in an enforcement action. [1] *See*

*McMullen v. Kutz*, 985 A.2d 769, 775 (2009).  "[T]he burden is on the claimant to justify a fee

---

[1] The law regarding fee-shifting pursuant to state or federal statutes may also provide helpful guidance, although it is not dispositive here.  *See Nationwide Energy Corp. v. Kleiser*, 1987 WL 10655, at *2 (E.D. Pa. May 7, 1987) (explaining that cases involving statutory fee-shifting "are only indirectly applicable since the award of attorneys' fees and expenses in this case is based upon the terms of the contracts between the parties.").

request." *Carmen Enterprises, Inc. v. Murpenter, LLC*, 185 A.3d 380, 390 (Pa. Super. 2018).

In assessing a request for fees, "the trial court may consider whether the fees claimed to have been incurred are reasonable, and [] reduce the fees claimed if appropriate." *McMullen*, 985 A.2d at 777. The lodestar, calculated by multiplying the total number of hours reasonably expended by the reasonable hourly rate, provides a starting point for determining a reasonable fee. *See Krebs v. United Ref. Co. of Pa.*, 893 A.2d 776, 790 (Pa. Super. 2006). Other relevant factors include:

> [T]he amount and character of the services rendered; the labor, time and trouble involved; the character and importance of the litigation; the amount of money or value of property affected; the professional skill and experience called for; the standing of the attorney in his profession; and the pecuniary benefit derived from the success.

*Fabral, Inc. v. B & B Roofing Co.,* 2011 WL 4528364, at *21 (E.D. Pa. Sept. 30, 2011) (citation omitted). The trial court need not address every factor. *See Gilmore by Gilmore v. Dondero*, 582 A.2d 1106, 1110 (Pa. Super. 1990) ("Consideration of any one or a combination of the [] factors may convince the court that a different fee is justified."). Rather, "[w]hat constitutes a reasonable amount of fees and expenses is subject to the court's equitable control," and significant discretion is therefore afforded in awarding fees. *Kleiser*, 1987 WL 10655, at *3; *see also In re Trust Estate of LaRocca*, 246 A.2d 337 (Pa. 1968) ("The allowance or disallowance of counsel fees rests generally in the judgment of the court of the first instance. . . ."); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("the district court has discretion in determining the amount of a fee award . . . in view of the district court's superior understanding of the litigation. . . .").

### A.   Attorneys' Fees Available Pursuant to the Settlement Agreement

Because Land's duty to reimburse the prevailing parties' attorneys' fees is based

exclusively on the Settlement Agreement, that agreement is the natural place to begin.  Pursuant to that agreement:

> In any action to enforce the terms of this Agreement (the "Enforcement Action"), including any action to recover damages or indemnity for any violations herein, the prevailing party of the Enforcement Action shall be entitled to recover reasonable attorneys' fees and disbursements in addition to costs of suit.

There is no dispute that Frompovicz and Niagara were the prevailing parties in the underlying motion to enforce the Settlement Agreement.  However, the parties disagree on what is encompassed by the language "any action to enforce the terms of this Agreement".  Niagara requests fees from February 24, 2020—when Land refused to execute and requested edits to the Settlement Agreement after the parties had reached a supposedly final agreement—through the filing of the petition for fees.  Niagara's itemized request therefore includes time its attorneys spent in informal negotiations with Land as well as formal mediation before Magistrate Judge Lloret before the motion to enforce was filed on August 11, 2020.  Niagara argues that these were all direct actions to enforce the agreement.  Likewise, although Frompovicz does not discuss the meaning of "any action," he requests fees beginning on March 6, 2020[2] through the filing of the request for fees.  Land, on the other hand, contends that the only "action to enforce the terms of this Agreement" is the motion to enforce the settlement agreement.  Consequently, he argues that neither party is entitled to fees incurred outside the preparation, filing, and litigation of said motion, including negotiation, mediation, and the drafting of the request for fees.

Under the plain meaning of "any action to enforce the terms of this Agreement," in the context of the fee-shifting provision in the parties' Settlement Agreement, the action at issue is

---

[2] On March 6, 2020, Niagara wrote a letter seeking the Court's assistance in resolving the parties' dispute, after which the Court ordered the parties to mediate their dispute before Magistrate Judge Lloret.

the motion to enforce the Settlement Agreement.  *See Profit Wize Marketing v. Wiest,* 812 A.2d 1270 (Pa. Super. 2002) ("[W]here . . . the fee-shifting provisions are contained in a contract, an appellate court will construe the contractual provisions in accordance with their plain and ordinary meaning.").  While Niagara seeks to adopt the broadest possible meaning of "action" and recover fees for any conduct undertaken to take the Settlement Agreement over the proverbial finish line, the context of the fee-shifting belies this position.  The fee-shifting provision includes "any action to recover damages or indemnity for any violations herein" as examples of enforcement actions, indicating that "any action" refers to legal actions, not negotiations.  *See* ACTION, Black's Law Dictionary (11th ed. 2019) ("An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (quoting 1 Morris M. Estee, *Estee's Pleadings, Practice, and Forms* § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885))).  Likewise, the fee-shifting provision provides for the "prevailing party" to recover reasonable attorneys' fees and "costs of suit." These phrases similarly suggest that "action" here refers to an adversarial legal proceeding.[3] While Niagara and Frompovicz were the prevailing parties on the motion to enforce, negotiation and mediation are attempts to avoid adversarial legal actions that do not typically produce a "prevailing party" nor "costs of suit."  This Court's October 16, 2020 order, which granted the request for attorneys' fees "incurred in litigating this motion," confirms this understanding.

On the other hand, Frompovicz and Niagara are entitled not only to attorneys' fees and costs associated with the preparation and filing of their motions to enforce the agreement, but

---

[3] Niagara's focus on the addition of "any" before "any action" to suggest a broader reading of the provision is unpersuasive.  The only case Niagara relies upon is inapposite as it dealt with the scope of an arbitration provision covering "any controversy or claim" and not the meaning of "controversy or claim." *See Smay v. E.R. Stuebner, Inc.,* 864 A.2d 1266, 1273 (Pa. Super. 2004).

also to recover the reasonable fees and costs incurred in preparing and filing their requests for costs and fees.[4]  The additional reasonable fees and costs incurred in the latter step are a necessary part of the enforcement action and therefore covered by the terms of the Settlement Agreement.

**B.      Reasonableness of Niagara's Fee Request**

Niagara requests $111,861.90 in attorneys' fees incurred in preparing and litigating the motion to enforce the Settlement Agreement, which is the product of 176 hours billed by three attorneys and one paralegal.[5]  It also requests $27.45 for the cost of delivering copies of its motion and briefs to Land.  Finally, it requests $21,454.58 for the 34.5 hours the same legal team spent preparing and filing the request for fees.

*1. Reasonableness of the Hourly Rate*

The starting point for determining a reasonable rate is the attorneys' hourly billing rate. *See Davis v. Riddle & Assocs., P.C.*, 579 F. Supp.2d 692, 694 (E.D. Pa. 2008).  The legal team on these motions was Rebekah B. Kcehowski, the Partner-in-Charge and Head of Litigation for Jones Days' Pittsburgh office, with eighteen years of complex litigation experience, who billed Niagara at a rate of $912.25 per hour; Laura Meaden, an attorney with over thirty years of experience, who billed Niagara at a rate of $712 per hour; Joseph Parsons, an associate attorney with eight years of experience, who billed Niagara at a rate of $556.25 per hour; and William

---

[4] As addressed below, attorneys' fees incurred in the request for fees are likewise subject to an evaluation for reasonableness and discretionary adjustment as appropriate.  *See United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 142 (3d Cir. 2018) (explaining that "the reduction analysis for the fees generated from litigating the fee petition is independent from the reduction analysis applied to the underlying litigation.").

[5] This amount excludes the non-compensable conduct included in Niagara's fee request, as discussed *supra*, although $2,225.01 is included for compensable preliminary research regarding the motion to enforce conducted on July 7 and 19, 2020.

Posega, a paralegal with nearly thirty years of experience who billed Niagara at a rate of $333.75 per hour.  Niagara argues that these rates are commensurate with the lawyers' and paralegal's skill, experience, and reputation.

Land, in contrast, urges the Court to adopt the Community Legal Services (CLS) fee schedule, which the Third Circuit has relied upon as a fair reflection of the prevailing market rate for legal services in Philadelphia.  *See* Community Legal Services, *Attorney Fees*, https://clsphila.org/about-community-legal-services/attorney-fees/ (effective July 1, 2018); *see also Maldonado v. Houstoun*, 256 F.3d 181, 187-88 (3d Cir. 2001) (adopting the CLS fee schedule as a reasonable hourly rate because it "has been approvingly cited by the Third Circuit" and frequently found "to be a fair reflection of the prevailing market rates in Philadelphia" (internal quotation marks and citations omitted)).  While the CLS fee schedule is a useful tool in the statutory fee-shifting context, it is an inappropriate measuring stick for this putative class action dispute between business entities that mutually agreed to fee-shifting by contract.  *See Carmen Enterprises*, 185 A.3d at 391 (explaining that, while the CLS fee schedule is beneficial as "a reference for lawyers who have prevailed in a public interest cause of action," it was not applicable to a purely contractual fee claim between private commercial parties).

When the parties entered the Settlement Agreement, including the fee-shifting provision, Land agreed to pay the attorneys' fees and costs of the opposing parties should they succeed in an enforcement action against him.  In entering this agreement after years of complex litigation, Land knew or should have known that he was agreeing to compensate experienced commercial litigation attorneys selected by the opposing parties at the reasonable rate charged for comparable disputes.  *See NRFC Philmont Holdings, LLC v. Aweber Sys., Inc*., 2014 WL 3844617, at *2-3 (E.D. Pa. Aug. 1, 2014) (awarding attorneys' fees based on the actual hourly

billed rate, and rejecting the CLS fee schedule, where "sophisticated business entities" that "engage in significant business matters" contracted for fee-shifting with foreknowledge of the "size and resources of the respective parties" and therefore should have reasonably anticipated that the opposing side "would hire a distinguished attorney from a large commercial litigation firm").  Niagara enlisted attorneys with significant experience in complex commercial and consumer litigation defense to defend it in this putative nationwide class action and paid these attorneys commensurate with their experience, reputation, and the complexity of the issues involved.[6]  Land does not challenge Niagara's evidence regarding the significant experience and professional accolades of the attorneys involved, nor offer a rationale for why the 2018 CLS fee schedule would be a more reasonable benchmark than the actual rates charged to Niagara.  *See Davis*, 579 F. Supp.2d at 694 (finding the CLS fee schedule failed to reflect the skill, experience, and reputation of attorneys who had "extensive experience in consumer law and class actions" and other professional accolades).  Accordingly, Niagara is entitled to reimbursement at the reasonable rate that it has paid its attorneys.

2. *Other Factors Bearing on Reasonableness*

There is a need, however, to reduce the compensable *time* spent on the enforcement action in that it was not reasonable under the circumstances.  *See Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir. 1989) ("[I]n setting the amount of any reduction, the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires.  In

---

[6] While the issues involved in the motion to enforce the settlement agreement and the requests for attorneys' fees and costs were not particularly complex, it is logical that, given their familiarity with the case, the same attorneys who had been litigating the case for years—including negotiating and drafting the comprehensive Settlement Agreement—would also litigate the motion to enforce the Agreement and provide documentation of their efforts in doing so.

order to exercise its discretion fairly, a district court needs flexibility in deciding whether to reduce a fee request and, if so, by how much.").

Included in Niagara's request for $111,861.90 in attorneys' fees incurred in preparing and litigating the motion to enforce the Settlement Agreement is $21,827.25 billed between October 5, 2020 to October 14, 2020 to refile briefs and exhibits related to the enforcement motion. The parties had attempted to file the briefs and exhibits under seal and, in their effort, docket entries had become confused and unmanageable. To clarify the docket, at the request of the Court, the parties refiled the briefs. There is no need to assign blame for this unfortunate event, but neither is there a basis for shifting the costs incurred by each party onto any other party even if a determination was made that $21,827.25 is a reasonable amount incurred to simply refile documents that have already been finalized.

The remaining $90,034.65 will be reduced by 10%, or $9,003.47, to $81,031.18. The hours expended on a relatively straightforward motion seeking to enforce the Settlement Agreement were unreasonably excessive and duplicative. *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990) ("Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary"). Eighty hours expended by an experienced associate in addition to over thirty hours expended by the Partner-in-Charge and Head of Litigation drafting, editing, and revising the same motion to enforce and a reply brief is unreasonable in light of the attorneys' familiarity with the matter, their respective experience, and the relative simplicity of the issues involved. *See Palmer*, 897 F.3d at 137-38 (finding that the trial court "permissibly relied on its knowledge of the case and the parties, in addition to what it regarded as the inflated amount of hours billed" in reducing the recoverable hours). This reduction is particularly appropriate given the high hourly rate that Niagara's counsel claims flows from their impressive expertise in

8

complex consumer and commercial litigation.  *See Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir. 1983) ("A fee applicant cannot demand a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the applicable law—and then run up an inordinate amount of time researching that same law."); *Becker v. ARCO Chem. Co.*, 15 F. Supp.2d 621, 633-34 (E.D. Pa. 1998) (reducing hours by 10% to compensate for excessive time spent by experienced attorneys on questions that "did not present novel issues of law that would require an experienced practitioner to expend an extensive amount of time").

The additional $21,454.58 Niagara requests for preparing and filing the request for fees will also be reduced by 20%, to $17,163.66.  The number hours spent on compiling the attorneys' fees documentation and related briefing—34.5 hours—is excessive in consideration of the simplicity of the issues involved and the administrative nature of compiling the attorneys' hours into a table.  A more significant reduction is appropriate because the request for fees demands an even lesser level of skill and expertise than the motion to enforce the Settlement Agreement; such work is not reflective of the significant experience and accolades that justify the attorneys' high hourly rates.  Moreover, Niagara derived a lesser pecuniary benefit from succeeding on the request for fees as it will ultimately be denied over 40% of the attorneys' fees requested.

In sum, Niagara will be awarded $81,031.18 in attorney's fees incurred in litigating the motion to enforce the settlement agreement, $17,163.66 in attorney's fees incurred in preparing and filing its request for fees—a total of $98,194.84 in fees—and $27.45 in costs.

## C.    Reasonableness of Frompovicz's Fee Request

Frompovicz requests attorneys' fees for 39.5 hours at a rate of $500 per hour, for a total of $19,750.  Two attorneys worked on this matter on behalf of Frompovicz at the same hourly

rate: David Stanoch incurred $10,250 in attorneys' fees for 20.5 hours billed between March 6,

2020 and September 3, 2020, and Ken Grunfeld incurred $9,500 in fees for 19 hours billed

between August 25, 2020 and the filing of the petition for fees.  In addition, Frompovicz requests

$190.29 in reimbursement for out-of-pocket costs, including electronic research, copying, and

mailing.

Land does not challenge the hourly rate or the costs, but rather argues that the entire

request should be denied because it is not supported by sufficient evidence.[7]  While it would

undoubtedly be preferable to provide the particulars of how each of the 39.5 hours were spent,

the documentation provided is adequate to assess the reasonableness of the request.  *See Smith v.*

*Int'l Servs., Inc*., 1997 WL 667872, at *4-5 (E.D. Pa. Oct. 9, 1997) (explaining that while the

records provided lack specificity and "are much less than optimal," "the inadequacy of

[petitioner's] records is not fatal to the fee request" where the court is able to draw inferences

regarding time spent on particular tasks in order to assess reasonableness).

Based on the evidence provided, Frompovicz's request is subject to two reductions.  First,

Frompovicz's request includes time spent on several non-compensable activities such as

negotiation and mediation before the motion to enforce was filed on August 11, 2020.  However,

the documentation provided for this period does not delineate how the 20.5 hours were spent and

the attorney at issue has since left the firm.  Absent time entries to analyze, the Court will

exercise its discretion to reduce the 20.5 hours billed by Stanoch by 20% to 16.4 hours.  *See*

*Smith*, 1997 WL 667872, at *4 ("If documentation of hours is inadequate, 'the district court may

reduce the award accordingly.'" (quoting *Hensley,* 461 U.S. at 433)).  Second, eleven hours must

---

[7] In response to a request for additional documentation in support of his request for fees, Frompovicz provided a detailed time sheet delineating how Grunfeld's 19 hours were spent.  The Court was also informed that Stanoch is no longer with the firm and did not formally record his time entries for this matter before taking leave.

be struck from Grunfeld's time sheet as those hours relate to the refiling of the parties' briefs and exhibits.  There are therefore only eight compensable hours for the time period between August 25, 2020 and the filing of the request for attorneys' fees and costs.

This leaves 24.4 cumulative billed hours between the two attorneys.  As the rate and conservative number of hours are reasonable considering Frompovicz's ultimate success on the enforcement action and request for fees, Frompovicz will be awarded these hours at the requested rate of $500 per hour, for a total of $12,200, in addition to the uncontested $190.29 in costs.

As set forth above, Niagara will be awarded $98,194.84 in attorneys' fees and $27.45 in costs.  Frompovicz will be awarded $12,200 in attorneys' fees and $190.29 in costs.

An appropriate order follows.

**February 16, 2020**                                    **BY THE COURT:**


                                                         */s/ Wendy Beetlestone*
                                                         _____
                                                         **WENDY BEETLESTONE, J.**